Submitted on briefs without argument July 10, decided July 30, 1912.

# CERRANO v. PORTLAND RY. LIGHT & POWER CO.*

[126 Pac. 37.]

NEGLIGENCE—IMPUTATION OF KNOWLEDGE.

1. So far as mere negligence is concerned, either one who inflicts or one who receives injury is bound by what he knew, or might have known by using ordinary care.

STREET RAILROADS—COLLISION WITH CHILD—INSTRUCTIONS.

2. In an action against a street railway company for death of a child, who suddenly ran in front of a car, it was proper to instruct that the motorman was not bound to slacken the speed of or stop his car, merely because decedent was in a safe place on the sidewalk, or in a safe place in the street, or near the street curb, and that no such duty arises until the motorman sees, or in exercising ordinary care should see, that the child or person so situated is about to or liable to get in the path of the approaching car.

APPEAL AND ERROR—TRIAL—REVIEW—INSTRUCTIONS.

3. Every party is entitled to have his theory of the case instructed on, if there is any evidence sustaining it; but, to properly present for review refusal of an instruction, it must appear that the request correctly stated the law.

NEGLIGENCE—"LAST CLEAR CHANCE DOCTRINE."

4. Under the "last clear chance doctrine," one is liable for injury negligently inflicted upon another, though the injured person by his own negligence put himself in the place of danger, if the person inflicting the injuries saw the peril in time to have avoided the accident by using ordinary care.

NEGLIGENCE—LAST CLEAR CHANCE DOCTRINE—ELEMENTS OF LIABILITY.

5. A necessary element of liability under the last clear chance doctrine is the existence of actual or apparent danger to the person injured, as the situation may appear to a reasonably prudent man under all the circumstances.

---

*As to duty to avoid injuring children on railway track, see note in 25 L. R. A. 663.

Duty of motorman to anticipate that child may leave place of safety, see note in 18 L. R. A. (N. S.) 371.

For doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendant was concurrent, see notes in 7 L. R. A. (N. S.) 132; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446 (and references); 27 L. R. A. (N. S.) 379.

On the question of the applicability of the doctrine of last clear chance where danger not actually discovered, see note in 36 L. R. A. (N. S.) 957.    REPORTER.

NEGLIGENCE—LIABILITY.

6. No one owes a duty to another, unless the latter is liable to Le injuriously affected by the negligence of the former.

TRIAL—COLLISION WITH CHILD—INSTRUCTIONS.

7. In an action against a street railroad company for death of a child, who ran in front of a car, instructions which ignored necessity for appearance of danger to the motorman were properly refused.

STREET RAILROADS—COLLISION WITH CHILD—COMPLAINT—REQUISITES.

8. A complaint against a street railroad company for death of a child, who ran in front of a street car, is insufficient if it fails to charge the existence of actual or apparent danger to the child, as the situation was presented to the motorman.

STREET RAILROADS—COLLISION WITH CHILD—INSTRUCTIONS.

9. In an action against a street railroad company for death of a child, who was struck by a car, it was not error to refuse to instruct that the standard of care by which the child's actions must be weighed was that of an ordinarily prudent child of the same age and in the same situation, where contributory negligence was disclaimed as a defense, and the court instructed concisely and fairly on the general principles of negligence.

STREET RAILROADS—CHILDREN IN STREETS—DUTY OF MOTORMAN.

10. While a motorman must use ordinary care to avoid collision between his car and pedestrians, the degree of absolute care which he owes to a child is far greater than that due an adult.

STREET RAILROADS—COLLISION WITH CHILD—INSTRUCTIONS.

11. In an action against a street railroad company for death of a child, which was struck by a car, it was proper to instruct that if the child appeared upon the track so suddenly and unexpectedly that the accident would have happened, though the car was going at a lawful rate of speed, and though a proper fender had been maintained on the car, the fact that the car was running at an excessive speed, and proper fenders were not maintained, should not be considered as material.

From Multnomah: JOHN B. CLEVELAND, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Henry Cerrano, as administrator of the estate of Cesare Cerrano, deceased, against the Portland Railway, Light & Power Company, a corporation, for alleged negligence in causing the death of plaintiff's intestate.

At the time mentioned in the complaint, the defendant was operating a street railway in the city of Portland. On May 26, 1909, the plaintiff's decedent, Cesare Cerrano,

a child of 4½ years of age, was killed in a collision with one of the defendant's cars. It is charged, in substance, in the complaint that the boy was on Williams avenue, and went upon the track of the defendant's street railway for the purpose of crossing the same, when the defendant negligently, recklessly, and carelessly ran its street car so as to strike him, whereby he was killed. Particularly specifying the alleged negligence, plaintiff states, in substance, that the car was operated at a greater rate of speed than that allowed by law, that the defendant failed to maintain a lookout ahead on the car, that no alarm nor other warning was given of its approach, that it was not equipped with the fender, apron, or guard required by law, and the defendant's motorman did not use, or lower, or attempt to lower, the attached fender, and that the car was operated at an unreasonable and excessive rate of speed in respect to the character of the place where it was operated, and then uses this language:

"That defendant then and there failed to stop, or attempt to stop, said car, after the motorman in charge thereof and operating the same saw, or with the exercise of reasonable prudence and care should have seen, the said Cesare Cerrano approaching, crossing, and upon said track ahead of said car, there being ample time within which to stop said car and prevent a collision with the said Cesare Cerrano after the motorman so saw, or should have, in the exercise of reasonable care, seen said Cesare Cerrano approaching, crossing, and upon said track ahead of said car; and plaintiff alleges that all and each of said acts of negligence were and was the approximate and direct cause of said collision of said car with said Cesare Cerrano, and of the injuries to and death of said Cesare Cerrano."

The answer denies all the allegations in any way imputing negligence to the defendant. It is averred, in substance, that, as the defendant's car was going along

Williams avenue, the child suddenly and unexpectedly ran backwards immediately in front of the car, and so close thereto as to leave practically no space between him and the car, and that, although all due care and diligence in that behalf was exercised, a collision ensued, by which the child met his death; that it was impossible to stop the car by any means; and that the death of the child was an accident pure and simple, wholly unavoidable under the circumstances. A further defense imputes contributory negligence to the deceased, and alleges in detail matters showing that the car was properly equipped with the fender required by law, and that it was in good condition and repair.

The affirmative matter of the answer was traversed by the reply. A trial by jury resulted in a verdict and judgment for the defendant, from which the plaintiff appeals.                                      AFFIRMED.

For appellant there was a brief over the names of *Messrs. Malarkey, Seabrook & Stott* and *Mr. George I. Brooks.*

For respondent there was a brief over the names of *Messrs. Wilbur & Spencer* and *Mr. A. M. Dibble.*

MR. JUSTICE BURNETT delivered the opinion of the court.

According to the bill of exceptions, Mr. Johnson, a passenger on the car, testified for plaintiff to the effect that he looked out of the car window to see why it was running so fast, and saw the boy about 8 or 10 feet from the car tracks. He estimated the distance between the front end of the car and where the boy was to be from ·60 to 100-feet, and that at that time the child was standing still. Violet Sundt, a little girl who was playing with the little fellow, said that he got afraid of a dog on the sidewalk and backed off into the car; that he backed all the way from the sidewalk to the track, all

the time looking at the dog; that when he commenced
to retreat from the dog the car was about a half a block
distant; that he stopped a moment on the curb, and
when he stepped off the curb the car was so close that
she saw there was going to be an accident sure.   Miss
Helen Sundt sat on a porch opposite which the accident
occurred.   She was a witness for the plaintiff, and
testified that she saw the little boy just before he got
killed; that he was in the street right near the curb, and
backed off all of an instant into the car.   He was standing
below the curb, and as the car came along he backed
right into it, right into the car, very quickly.   T. W.
Alexander, a witness for the defendant, also a passenger
on the car, testified, in substance, that he could see the
children all the time until the car came around on the
curve, when his vision was cut off by the trees and tele-
graph poles; that the last he saw of them they were on
the sidewalk playing, and he heard a scream and realized
that they must have hit one of the children, and he
stepped down on the lower step and could see the little
boy under the hind trucks of the car, and he immediately
swung off the car.

1-3.   The principal error of which the plaintiff com-
plains in his brief is that the court did not present his
theory of the case to the jury.   Among other directions to
the jury, the court gave the following:

"I instruct you that there was no duty resting upon
the defendant's motorman to slacken the speed of or to
stop the car, merely because the deceased was in a safe
place upon the sidewalk, or in a safe place in the street,
or near the curb, as the defendant's car approached.
No such duty arises until the motorman sees, or, in the
exercise of ordinary and reasonable care, should see,
that the child or person so situated is about to or liable
to get in the path of the approaching car."

The following three instructions, asked by the plaintiff, were refused:

(a) "If a person, and especially one of tender years, is approaching a street car track, it is the duty of the motorman in charge of said car to slacken the speed or stop the car, if necessary, to avoid a collision. If, therefore, the said . Cesare Cerrano was seen by the motorman in the act of approaching the track upon which said car was being then operated, or ought to have made it apparent, if said motorman was exercising ordinary care, that said Cesare Cerrano was unaware of the approach of said car, or if said motorman, in the exercise of ordinary care, ought to have seen said Cesare Cerrano so approaching said track, and there was then sufficient time for an ordinary skillful motorman to stop said car · and prevent a collision with said Cesare Cerrano it was the motorman's duty to stop the said car and avoid a collision, and if he failed to do so defendant was negligent."

(b) "If the motorman of said car saw, or in the exercise of ordinary care should have seen, Cesare Cerrano approaching said track in a manner and under such conditions that an ordinarily prudent person observing him would have concluded that said Cesare Cerrano was not aware of the approach of said ·car, or was paying no heed thereto, then I instruct you that said motorman had no right to assume that said Cesare Cerrano would stop before reaching the track, or would hasten and cross before said car."

(c) "Even if you should find that the motorman did not see the said Cesare Cerrano approaching said track, if you find that, in the exercise of ordinary care, he should have seen him so approaching said track in front of said car in time for an ordinarily skillful motorman, in the exercise of ordinary care, to have stopped said car and avoided a collision, then, if he failed to see said Cesare Cerrano so approaching said track, and failed to stop said car, defendant was negligent."

So far as mere negligence is concerned, either party, the one inflicting or the one receiving the injury, is bound by what he knew, or might have known by the exercise

of ordinary care and diligence. This element is recognized in the instructions given by the court to which the plaintiff excepted. That excerpt from the charge is a proper statement of the law in a negative form, and from the standpoint of the defendant. It remains to consider, on this branch of the case, whether the instructions requested by the plaintiff and refused by the court properly declared the law according to the theory of the plaintiff. Although it is a true principle that each party is entitled to have his theory of the case stated to the jury, provided there is any testimony sustaining such theory, leaving the facts to the jury, yet in order to properly present the question on appeal, it must appear that the requests of the complaining party to the court to charge the jury have correctly enunciated the law applicable to the theory propounded by the complaining party.

4-8. What is known as the doctrine of "last clear chance" goes at least as far as to hold that, although the injured party has by his own negligence put himself in a place of danger, yet, if the party inflicting the injury saw the perlious situation in time to have avoided it by the exercise of ordinary care, the latter is liable for the ensuing injury, notwithstanding the previous negligence of the former. There is room for argument as to whether or not the party inflicting the injury is bound in such a case by what he merely might have known by proper attention, but did not actually know. However, it is not essential to consider that in this case. A necessary element in such instances is the actual or apparent danger of the party receiving the injury, as the situation may appear to a reasonably prudent man under all the circumstances. It is a culpable wrong to hurt one who has placed himself in a position of danger even negligently, if the injury can be avoided by the exercise of ordinary care, when the peril becomes apparent to the party con-

ducting the instrument of danger. We do not decide that a defendant is bound, or not, merely by what it might have known by the exercise of ordinary prudence, where the situation is brought about by the previous negligence of the injured party; but we do hold that there must be either actual or apparent danger to the one suffering the hurt. A contrary holding, or the approval of the three requests of the plaintiff, already quoted, would be to unnecessarily cripple street car service and require a motorman to stop his car whenever a child appeared upon the street, no matter how far distant. No one owes a duty to another, unless the latter is liable to be affected injuriously by the neglect of duty on the part of the former. The quoted requests of the plaintiff, which were refused by the court, omit entirely the consideration of the actual or apparent danger to the child, and were, for this reason, properly refused. For the same reason, the allegation of the complaint, already mentioned, is defective, and does not state a condition rendering the defendant liable. For all that appears in the complaint, the child may have been visible a half a mile away from the car; but that would not ordinarily call into action any emergent measures to stop the car. It is the existence of actual or apparent danger to the party receiving the injury which demands exertion by the other party to avoid the injury; and this danger must be pleaded in order to make a cause of action against a defendant in such cases. Illustrating the principle that in situations of peril, brought into being by the actions or neglect of both parties, it is the danger to the injured one, ascertainable long enough before the collision to have prevented it, which is one of the essentials to charge a defendant, the following cases are instructive: *Bunyan* v. *Citizens' Ry. Co.*, 127 Mo. 12 (29 S. W. 842) ; *Smith* v. *Houston & T. C. R. Co.*, 17 Tex. Civ. App. 502 (43 S. W. 34) ; *McAndrews* v. *St. Louis & S. Ry. Co.*, 83 Mo. App. 233;

*Austin, etc., Ry. Co.* v. *Goldstein*, 18 Tex. Civ. App. 704 (45 S. W. 600) ; *Klockenbrink* v. *St. Louis, etc., R. R. Co.*, 81 Mo. App. 351.

9, 10. The plaintiff also complains that the court erred in refusing the following instruction, which he requested:

"The standard of care by which Cesare Cerrano's actions must be weighed is what an ordinarily prudent child of his age would have done, being similarly situated as he was."

In connection with the principle of "last clear chance," which we have been discussing this instruction would have been proper if the element of danger had been pleaded; for in estimating the real or apparent danger the motorman was bound to take into consideration all such circumstances. Proximity to a street car track is far more dangerous to a child of tender years than to an experienced adult; and, while in both cases the motorman must use ordinary care, yet the degree of absolute care which he owes to a·child is far greater than that due to the adult. In their brief counsel for the plaintiff claim that this instruction was requested for the purpose of affecting the duty of the motorman towards the child. We have shown, however, no active duty is owing from the motorman towards the child until the latter is or appears to be in danger; and this element is neither pleaded in the complaint, nor mentioned in the requested instructions. This direction would be applicable to the issue of contributory negligence raised by the defendant in its answer; but the plaintiff says it was not offered for that purpose, and states in his brief that contributory negligence was not pleaded or claimed as a defense in the case. In speaking of negligence, the court said to the jury:

"Now, negligence is defined by the law as the failure to do what a reasonably prudent person would ordinarily

have done under the circumstances of the situation, or doing what a reasonably prudent person would ordinarily not have done under the circumstances of the situation."

This states the general principle upon which the conduct of a person is based, a departure from which would be negligence. Considering the purpose of the plaintiff in offering this instruction, and his disclaimer of the matter of contributory negligence, we cannot say that the court erred in omitting to give this instruction, especially when the general principle of negligence was so concisely and fairly enunciated in the charge given by the court.

11. In respect to the excessive rate of speed at which the car was alleged to have been operated, and the lack of proper fenders thereon, together with the failure to use the fender that was attached to the car, all alleged as negligence, the court charged the jury that if the deceased appeared upon the track so suddenly and unexpectedly that the accident would have happened, although the car was going at a lawful rate of speed, and although the fender might have been of the lawful kind and properly operated, these things should not be considered as material, and to these instructions the plaintiff objects. In *Wallace* v. *Railway Co.*, 26 Or. 174 (37 Pac. 477: 25 L. R. A. 663), Mr. Chief Justice BEAN laid down the rule thus:

"The contention for the defendant is that the evidence does not in any way tend to show that the excessive or dangerous speed of the car was the proximate cause of the injury, or that it would not have occurred if the car had been running at a rate of speed perfectly safe and legal. If we assume, as does the argument for the defendant, that the child, without the fault or negligence of the defendant, suddenly and unexpectedly appeared on the track immediately in front of the car, we might conclude that her death was an unavoidable accident, and that the rate of speed would be immaterial; for

upon such an appearance upon the track no precaution could have prevented the accident."

The fair deduction to be made from this language is that it is a question of fact to be submitted to the jury whether or not the appearance of the deceased upon the track was so sudden that no precaution would have prevented the accident, and that under such circumstances the lack of proper appliances or the excessive speed of the car becomes immaterial. In the view of the law thus announced, this question was properly submitted to the jury in the case at bar, and the verdict amounts to a finding that the accident would have occurred, notwithstanding the car was moving at an unreasonable rate of speed, or was without proper appliances. The sudden death of a little child under such circumstances wrings the heart of any man above the grade of a brute; but the jury evidently believed from the testimony that the child appeared so suddenly in dangerous proximity to the car that it was impossible for the motorman to stop the car. They must have thought, also, that the babe's death was pure accident, which reasonable diligence could not prevent, and that the motorman was not negligent, where his shortcoming would be attended with such shocking consequences. The verdict for the defendant is one which we do not feel at liberty to disturb.

The judgment must be affirmed.　　AFFIRMED.