## Western Union Telegraph Co. v. Sisson.

### (Decided October 31, 1913).

## Appeal from Graves Circuit Court.

1. Telegraph and Telephone Companies—Transmission of Money—Delay—Company's Liability.—Where a telegraph company, with full knowledge of his father's illness, undertakes to transmit to the son money to enable him to return to his father's home, and to notify him of the receipt of the money, but fails to do so, and by reason of such failure the son is thereby prevented from returning home in time to be present at his father's burial, a recovery for mental anguish may be had.

2. Telegraph and Telephone Companies—Instructions.—Though an offered instruction covering the defendant's side of the case is not in proper form, it is the duty of the court to give a correct instruction embodying the defense relied on.

ROBBINS & ROBBINS, RICHARDS & HARRIS and A. G. RONALD for appellant.

W. J. WEBB and GREGORY & MARTIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Will Sisson, brought this action against the defendant, Western Union Telegraph Company, to recover damages for its failure to transmit to him at Davenport, North Dakota, the sum of $20, which was sent to him for the purpose of enabling him to return to his home in Kentucky in order to be with his father before his death, and to attend the burial of his father. The jury found for plaintiff and fixed his damages at $500. The defendant appeals.

The record discloses the following facts: Sisson was at Davenport, N. D. He had been advised that his father was ill and was expected to live only a short while. His mother lived in Graves County, Kentucky. Not having sufficient money to defray his expenses home, he wrote his mother informing her of this fact. Shortly thereafter he received a letter stating that money would be sent him. His brother-in-law, Dr. Sisson, had some money on deposit at the Farmers National Bank at Mayfield. R. B. Wallace, another brother-in-law, went to that bank on September 3rd, made arrangements to get the money, and then went with the cashier to the defendant's office in Mayfield. On arriving at the office, Mr.

Wallace explained to defendant's agent the condition of plaintiff's father, and told him that he wanted to wire plaintiff the sum of $20 to defray his expenses home. He says that defendant's agent agreed to transmit the money to Davenport, N. D., and to notify plaintiff that the money was there. He paid defendant's agent the sum of $1.45, which included the transmission fee and also the charge for notifying plaintiff. Plaintiff was at Davenport on September 3rd, and 4th, 1909, and called both at the telegraph office and at the postoffice to find out if there was anything there for him. No telegram nor mail had been received. Plaintiff's father died on Sunday, September 5th. He was buried Monday afternoon, September 6th. Had plaintiff received the money, he could and would have been able to reach his home in time to attend his father's burial.

In its original answer, defendant in one paragraph traversed the allegations of the petition, and by a second paragraph pleaded contributory negligence on the part of plaintiff. Later on it filed an amended answer admitting that it entered into a contract to transmit to plaintiff the sum of $20, and was paid $1.45 for that service. It admitted that the message miscarried in some way unknown to it, without its fault, but alleged that the sum was afterwards paid to the sender. Several months later it filed a second amended answer, alleging that the original and amended answer was filed without knowledge on the part of the attorneys of the true facts of the case, and pleading that Davenport, N. D., was not a money order office, but that Fargo was the closest and most convenient money order office to which money could be transmitted; that this fact was explained to the sender of the message, and it was agreed between defendant and plaintiff that the money should be sent to Fargo and transmitted to a bank at Davenport, which bank was to notify plaintiff, by letter addressed to general delivery, that the money was there; and that it complied with the contract.

Defendant's agent or manager at Mayfield testified that he was informed by the sender of the condition of plaintiff's father, and of the purpose for which the money was sent, but says that he explained to the sender that the company had no transfer station at Davenport, and that the only way the money could be transmitted was through its office at Fargo, where it was to be delivered to a bank which would send the money to a bank

at Davenport, and the bank there was to inform plaintiff of the arrival of the money, by letter mailed to him at that point. The officers of the banks at Fargo and Davenport gave their depositions and stated that the money was actually received by each of the banks, and notice of its receipt was mailed to plaintiff. Defendant also filed a copy of the telegram alleged to have been sent pursuant to the agreement. The telegram is as follows:

"Mayfield, Ky., Sept. 3, 1909.

"Transfer Agent,
        Fargo, N. D.

"Pay Will Sisson, mail notice General Delivery, Davenport, N. D. Willful Damage, from Farmers National Bank, Mayfield, Ky. Caution.

"J. D. HOWARD, Transfer Agent."

The defendant's agent at Mayfield also testified that the fee for this serivce, according to his recollection, was 75 cents.

At the outset we are met by the contention of the defendant that the transaction in question was purely of a business nature, and that damages for mental anguish growing out of the failure to transmit the money are not recoverable in a case of this kind. In support of this position we are cited to a number of authorities. While it is true that damages for mental anguish are not ordinarily allowed in business or commercial transactions, and that some of the courts, in cases like that under consideration, have denied the right to such damages, the question is no longer an open one in this state. In Cumberland Telephone & Telegraph Co. v. Quigley, 129 Ky., 788, it was held that where the telephone company, with knowledge of the purpose for which it was to be used, agreed to transmit money to be used in preparing plaintiff's daughter's remains for burial, but failed to do so, and by reason thereof he was unable to make prompt burial or to see her remains before decomposition set in, plaintiff could recover for mental anguish. That case cannot be distinguished from this. Defendant's agent admits that he was fully informed of the condition of plaintiff's father, and of the purpose for which the money was sent. It is immaterial, therefore, that the telegram which he claims to have sent did not disclose these facts.

If, under these circumstances, the company undertook to transmit the money in question, and to notify

plaintiff of its transmission, the case was one where mental suffering might be reasonably anticipated as the natural result of a breach of the contract. The mere fact that some other agency might have intervened and prevented plaintiff's return in time to be present at his father's burial is not sufficient to relieve defendant of liability. Plaintiff says that without the money transmitted to him he did not have sufficient means to reach home. Had he received the amount transmitted, he could and would have returned in time, if not to see his father before his death, at least to be present at his burial. The question was therefore for the jury.

Defendant further contends that there was a failure of proof. We have carefully read the evidence for plaintiff, and fully considered it. It is to the effect that defendant undertook not only to transmit the money, but to notify plaintiff of its transmission, and that the fee of $1.45 included the charge for both services, and that being true, it was sufficient to take the case to the jury.

The court, in instruction No. 1, submitted to the jury plaintiff's theory of the case. Defendant offered an instruction presenting its side of the case. This instruction authorized a recovery for the defendant if it did not have a transfer station at Davenport, N. D., and used ordinary diligence to transmit the message through the banks at Fargo and Davenport. Manifestly, this instruction should not have been given. The fact that the defendant had no office at Davenport would not relieve it of liability if, as a matter of fact, its manager at Mayfield agreed to transmit the money to Davenport, for such a contract was clearly within the apparent scope of his authority, and therefore binding on the company. However, if it was merely understood and agreed between the sender and the defendant's agent at Mayfield that as the defendant had no transfer office at Davenport, the money should be transmitted through a bank at Fargo to a bank in Davenport, which in turn should notify plaintiff by letter addressed to him at the general delivery at that point, and the defendant and the officers of the banks, within a reasonable time, did transfer the money and notify plaintiff of its receipt, by letter addressed to him at the general delivery and duly posted at that point, there should be a finding for the defendant. That being true, the court, for the purpose of presenting defendant's side of the case, should have so in-

structed the jury, although the instruction offered by the defendant was not in proper form. Troutwine v. L. & N. R. R. Co., 32 Ky. L. R., 5, 105 S. W., 142; L. & N. R. R. Co. v. King's Admr., 131 Ky., 347; West Ky. Coal Co. v. Davis, 138 Ky., 667.

For the reasons indicated, the judgment is reversed and cause remanded for new trial consistent with this opinion.