# SORENSON v. KRIBS.*

(161 Pac. 405.)

**Principal and Agent—Agent's Authority—Implied Warranty—Damages.**

1. When an agent represents that he is empowered to make a particular contract on behalf of his principal, but in fact has no such authority, the party to whom the representation is made, and who relies thereon and complies with the terms of the supposed agreement, can maintain an action *ex contractu* against the agent, on the implied warranty, to recover the damages sustained.

[As to authority of agent to warrant, see note in Ann. Cas. 1913D, 473.]

*Assignments—Right of Action.*

2. A husband's assignment to his wife of his claim against an owner for a commission for effecting a sale of land would not suffice as a transfer of the husband's cause of action against a broker, who misrepresented himself to be empowered by the owner to employ plaintiff's husband; and unless she obtained an assignment of the claim against the agent before action was brought, she could not recover against him.

**Assignments—Right of Action—Question for Jury—Time of Assignment.**

3. In an action by a wife as the assignee of her husband to recover damages from defendant for his misrepresentation of his authority from an owner to employ the husband as a broker, *held*, that it was for the jury to determine whether the assignment of the claim was made before the action was commenced.

**Principal and Agent—Authority of Agent—Action for Damages—Construction of Pleading.**

4. Where the complaint alleged that defendant represented his authority to obligate an owner of land to pay a broker's commission to plaintiff's assignor on a sale acceptable to the owner, and that the defendant had no such authority, an answer denying the allegations generally, with an unqualified allegation that defendant employed plaintiff's assignor to sell the land on commission, and not stating that such engagement was made on behalf of the owner, construed most strongly against the defendant, implied that the employment was made for defendant's benefit, and that he had no authority to make such a contract on behalf of the owner.

**Principal and Agent—Agent's Authority—Presumption and Burden of Proof.**

5. On such implication that defendant employed plaintiff's assignor on his own account to sell the land upon commission, for the payment

*For authorities passing on the question of personal liability to other contracting party of one who, without authority, assumes to contract as agent for another, see note in 34 L. R. A. (N. S.) 518.

REPORTER.

of which the owner was not bound, Section 799, subdivision 33, L. O. L., raised the presumption that such want of authority continued after an option obtained by plaintiff was declared forfeited, and to overcome such presumption the burden was on defendant to show that authority was thereafter conferred upon him by the owner to engage a broker and to agree to pay him a commission for procuring a purchaser acceptable to the owner.

Evidence—Burden of Proof—Party Having Peculiar Knowledge.

6. When a fact is peculiarly within the knowledge of a party, he must, if necessary, furnish the evidence thereof.

Principal and Agent—Liability of Agent—Unauthorized Act—Action for Damages—Question for Jury.

7. In an action for damages for defendant's misrepresentation of his authority to employ plaintiff's assignor as a broker on behalf of the owner of land, *held,* that the denial of defendant's motion for a directed verdict was not error.

Trial—Requested Instructions—Given Instructions.

8. In such action, there was no error in refusing to give defendant's instruction omitting the matter of a renewed or subsequent employment, where its substance was embraced in the instruction given.

Appeal and Error—Instructions—Necessity of Requests.

9. Under Section 139, L. O. L., providing that the court shall state to the jury all matters of law thought necessary for their information, but shall not present the facts of the case, and shall tell the jury that they are the exclusive judges of questions of fact, and Section 868, declaring the jury the judges of the evidence, unless it is declared to be conclusive, and that they are to be instructed as to precautionary matters, no failure of the court in submitting a party's theory of the case can be considered on appeal, except upon the denial of a requested instruction directly stating the law applicable to the case.

Trial—Instructions—Requests—Applicability.

10. No error is committed in denying a requested instruction, which does not correctly announce the law applicable to the case, though such request may call the court's attention to a particular matter not covered by the general charge.

Appeal and Error—Instructions—Review.

11. In an action for damages for defendant's misrepresentation of his authority to employ plaintiff's assignor as a broker on behalf of the owner, where defendant acquiesced in the court's instruction that plaintiff was entitled to the entire commission and interest, or nothing, the defendant had no reason to complain of the court's refusal to instruct that plaintiff could not recover if the agreement was for defendant's payment to plaintiff's assignor of part of the commission to be received from the owner, or that, if the contract between plaintiff's assignor and defendant was for the division of the commission between themselves and another, the verdict should be for the defendant.

Appeal and Error—Review—Broad Equities of Case.

12. In a law action, where, on appeal, only alleged errors duly assigned can be considered the argument upon the "broad equities" of the case has no place.

From Multnomah: Calvin U. Gantenbein, Judge.

Department No. 2.    Statement by Mr. Chief Justice Moore.

This is an action by Mrs. N. V. Sorenson, as the assignee of her husband, George Sorenson, a real estate broker, against F. A. Kribs, to recover damages. The material facts are that C. A. Smith, of Minneapolis, Minnesota, was the equitable owner of 7,480 acres of timber land in Douglas County, Oregon, and employed the defendant, a real estate broker, of Portland, in this state, to negotiate a sale of the real property. In order to procure a purchaser, Kribs appointed Sorenson, who on September 28, 1906, produced J. O. Storey, to whom the defendant gave an oral option to buy the land at $187,000, on account of which $50,000 was required to be paid within 60 days. Sorenson assured Storey he could have all the time desired in which to make the partial payment, and for that reason he neglected to pay the stipulated sum within the time limited, whereupon the option was declared at an end. Thereafter Storey commenced an action against Kribs to recover the damages which he had sustained, consisting of more than $2,000 expended in examining the timber growing on the land and $63,000, which extra sum he could have realized upon a resale of the premises. While that action was pending, Storey, in the name of the Storey-Bracher Lumber Company and C. P. Bratnober, entered into a written contract with Smith to purchase the land for $300,000; the vendees stipulating to save the vendor harmless from any claim for a commission for negotiating a sale of the land, except

that of Kribs, whereupon that action was dismissed. In an action by this plaintiff as the assignee of her husband against Smith to recover a commission on account of the sale thus consummated, she recovered $15,000; but the judgment was reversed on the ground that Kribs had no authority to bind Smith to pay a commission: *Sorenson* v. *Smith,* 65 Or. 78 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612). The facts here involved, and referred to in the opinion in that case, are set forth as matters of inducement in the complaint herein, which charges, in effect: That about July ——, 1907, the defendant, assuming to act for Smith and representing that he had authority to do so, agreed with Sorenson to obligate Smith to pay a commission of 5 per cent of the purchase price of the land, continued to employ Sorenson to procure a purchaser of the real property, and instructed the broker further to negotiate with Storey in order to induce him to pay a greater sum than he had originally offered for the land, and Kribs agreed to pay Sorenson 5 per cent of the purchase price if he could find a buyer who was able, ready and willing to pay a sum which was acceptable to Smith. That, pursuant to that employment, Sorenson at the defendant's request continued to negotiate with Storey until October 31, 1909, when he was induced to purchase the land for $300,000, which sum was satisfactory to Smith, whereupon Storey, in the name of the Storey-Bracher Lumber Company, and Bratnober, with whom Storey was associated, made a contract with Smith to buy the land for the sum last named, which amount has been paid. That by reason of the premises Sorenson became entitled to a commission of $15,000, the payment of which was demanded of Smith, who refused to comply therewith on the ground that Kribs had no author-

ity to bind him to pay any commission. That in consequence thereof Sorenson was damaged in the sum of $15,000 and interest thereon at 6 per cent per annum from October 31, 1909. That the defendant had no authority to obligate Smith to pay any sum as commission, and Sorenson's claim therefor was assigned, prior to the commencement of this action, to the plaintiff, who is the owner and holder thereof.

The answer unqualifiedly denies each averment of the complaint generally. For an affirmative defense, the facts relating to the first option and the cancellation thereof are set forth, and it is substantially alleged that when Storey's original agreement was terminated, the defendant informed Sorenson thereof and notified him that his employment as a broker or otherwise was ended; that whatever services may have thereafter been rendered by Sorenson, in connection with the sale of the land, were not performed for the defendant acting for himself, or for any other person under his employment. It is further averred that, subsequent to the termination of the original option, Storey and Bratnober negotiated for the purchase of the land directly with Smith, who refused to sell to them unless Sorenson would waive any claim that he might have for a commission, whereupon Storey, acting for himself, entered into an agreement with Sorenson by the terms of which it was stipulated that, if Bratnober would furnish all the money necessary to purchase the land and appoint Sorenson and Storey brokers to negotiate a resale of the premises on or before July 1, 1910, they should be paid a commission for their services; that Bratnober complied with these conditions, and Sorenson in consideration thereof waived all claims for a prior commission.

The reply put in issue the allegations of new matter in the answer, and the cause having been tried, the jury found for the plaintiff as demanded in the complaint, viz., $19,925, and, judgment having been rendered on the verdict, the defendant appeals.        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Giltner, Sewall & Corliss,* with oral arguments by *Mr. R. R. Giltner, Mr. Guy C. H. Corliss* and *Mr. Edwin H. Flick.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes* and *Mr. George A. Pipes,* with an oral argument by *Mr. Martin L. Pipes.*

Opinion by MR. CHIEF JUSTICE MOORE;

1. Preliminary to a consideration of the errors assigned, it should be said that this action is founded upon the legal principle, established in this state, that when an agent represents he is empowered to make a particular contract on behalf of his principal and no such authority has been bestowed, the party to whom the statements were made by relying thereon and complying with the terms of the supposed agreement so concluded, can maintain an action *ex contractu* against the agent, on the implied warranty, to recover the damages thus sustained: *Cochran* v. *Baker,* 34 Or. 555 (52 Pac. 520, 56 Pac. 641) ; *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215).    See, also, *Kennedy* v. *Stonehouse,* 13 N. D. 232 (100 N. W. 258, 3 Ann. Cas. 217), and *Haupt* v. *Vint,* 68 W. Va. 657 (70 S. E. 702, 34 L. R. A. (N. S.) 519).

When this cause was submitted to the jury, the defendant's counsel moved for a directed verdict in favor of their client, on the grounds that the evidence received

disclosed the claim sued on was not assigned prior to the commencement of this action; that the plaintiff introduced no testimony tending to show any want of authority on the part of the defendant to bind Smith to pay a commission; and that this action is founded upon a contract alleged to have been made in July, 1907, when no evidence thereof was offered. Considering these matters in the order stated, attention is called to the case of *Sorenson* v. *Smith,* 65 Or. 78 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612), where the broker's claim now asserted against the defendant for a commission for negotiating the same sale is alleged to have been assigned to this plaintiff. At the trial herein George Sorenson testified, on direct examination, that prior to the commencement of this action he assigned his claim for a commission to his wife, who then was the owner and holder thereof. On cross-examination, however, in answer to the inquiry, "Who did you tell her you had a commission from?" he replied, "From C. A. Smith. Q. Did you ever make any other assignment to her? A. No." On redirect examination, the attention of the witness was called to the testimony which he had thus given on cross-examination, and he was asked whether or not, before the commencement of this action, he had assigned his claim for a commission to his wife. He answered:

"I misunderstood the question. I meant, I made the assignment of this $15,000. * *
"Q. That is the claim in this case?
"A. Yes."

On recross-examination he was asked:

"When was it you made the assignment?"

He responded:

"Just before this suit was brought.

"Q. When was that?

"A. About a year and a half ago.

"Q. What did you say to your wife?

"A. I said I am assigning this claim. You will have to bring a new suit.

"Q. What is this claim?

"A. This $15,000.

"Q. What is this claim you assigned to your wife?

"A. My claim against Kribs.

"Q. What for?

"A. Commission of $15,000."

2, 3. It needs no argument to show that the broker's claim for a commission against Smith, which was assigned to this plaintiff before she began her action against him, would not suffice as a transfer of a cause of action against Kribs, and unless she obtained an assignment of the claim against the latter before this action was instituted, she was not entitled to a recovery herein. From Sorenson's contradictory statements, relating to the assignment, the court could not, as a matter of law, say which sworn declaration was true. It was therefore the province of the jury, from a careful comparison and consideration of such testimony, to determine whether or not the assignment of the claim against Kribs was made before this action was commenced: *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513 (70 Pac. 523). No error was committed in respect to the assignment.

4. It will be remembered the complaint charged that the defendant represented he was authorized to obligate Smith to pay a broker's commission in case a sale of the land could be made for a price acceptable to the owner, and that the defendant did not have such authority. The averments of the complaint are denied generally without any qualification in the answer which

alleged that prior to September 26, 1906, the defendant employed Sorenson to sell the land on commission. The answer does not state that such engagement was made for or on behalf of Smith. Construing that pleading most strongly against the defendant, it must therefore be taken for granted that the employment was made for his benefit. It is also fairly to be inferred from the defendant's pleading that he had no authority to make such a contract on behalf of his principal.

5, 6. It being implied from the answer that the defendant employed Sorenson on his own account to sell the land upon commission for the payment of which Smith was not obligated, the law raises the presumption that such want of authority continued after the oral option was declared forfeited: Section 799, subd. 33, L. O. L. In order to overcome this presumption the burden of proof was imposed on the defendant, notwithstanding his general denial of a want of authority, to show to the satisfaction of the jury that after the option was terminated, authority was conferred upon him by his principal to engage the services of a broker and to agree to pay him a commission for procuring a purchaser of the land who would pay a price which was acceptable to the owner: *Peabody* v. *Oregon R. & N. Co.,* 21 Or. 121, 134 (26 Pac. 1053, 12 L. R. A. 823). The conclusion thus reached is not unreasonable, for the rule is elementary that, when a fact is peculiarly within the knowledge of a party, he must, if necessary, furnish the evidence thereof: *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3 Am. St. Rep. 162). As the burden was on the defendant in this particular, he cannot complain of any lack of proof in this respect.

7. George Sorenson testified that about three or four months after the original option was canceled Storey made another offer to the witness to purchase the land, which bid he submitted to the defendant who said:

" 'We will keep on working on the deal. We will pull it through yet.' * *

"Q. Can you state during what month in 1907, if at all, you continued to act in the negotiations, to bring about that sale?

"A. Well, I continued all the time, trying to put it through.

"Q. Can you state more definitely during what months in 1907 you went to Mr. Kribs about it?

"A. I used to go to his office pretty near every week or so.

"Q. During that year?

"A. Yes.

"Q. Did you, or not, have any conversation with Mr. Storey about it in that year?

"A. Yes, sir; all the time. I had the same office with him.

"Q. During that time, 1907, you may state whether or not the parties got together on any agreement about the price of the land.

"A. No, they never got together."

Viewing this testimony in the light of the averment of the complaint that about July ——, 1907, the defendant "continued the employment of the said George Sorenson and instructed him to negotiate further with said J. O. Storey," it will be seen that though Sorenson persisted in his efforts to bring about a sale of the land to Storey after the original option was canceled, and for that purpose frequently conferred with Kribs about the matter, no assent was given by the latter relating to such sale until about three months after the oral option was declared forfeited. Here is testimony tending to show the making of a new contract. When the agreement was consummated is un-

important, provided it was concluded prior to May 22, 1909, when the amendment of Section 808, L. O. L., went into effect, declaring void any unwritten agreement thereafter entered into relating to the employment of a broker to sell land: Laws Or. 1909, c. 27. No error was committed in denying the motion for a directed verdict.

8. An exception having been taken, it is maintained by defendant's counsel that an error was committed in denying their fourth request to instruct the jury as follows:

"Defendant claims that, when the first deal with Storey fell through, he notified George Sorenson that his employment by the defendant was ended, and that if he desired to act as broker in the matter any further he must make an arrangement with said C. A. Smith. Defendant had a perfect right to terminate the employment of George Sorenson after the first deal with Storey fell through, and if said employment was terminated at said time so far as defendant is concerned, your verdict must be in favor of the defendant. A person who employs a broker may terminate the employment at any time, provided he acts in good faith, and there is no evidence in this case warranting any finding that defendant acted in bad faith in terminating said employment at said time, if he did so terminate it."

At the defendant's request the court in its general charge said:

"A broker must perform his contract while his employment lasts, and if he fails to do so before his employment has been terminated, he cannot recover anything for any services that he might have rendered up to the time his employment was so terminated. If he desires to protect himself, he may do so by providing in his contract that his employment shall last for a specified time; and if this is not done, it is the absolute right of the person who employs him to ter-

minate the employment at any time without any lia-
bility, provided he acts in good faith, and provided the
broker has not at that time fully performed his part
of the contract by obtaining a purchaser on terms
acceptable to the seller of the property.''

It will be observed that the fourth request desired
a direction to the jury that their verdict must be for
the defendant if the employment of Sorenson was
terminated when Smith withdrew the land from the
market. The language thus employed omits an alle-
gation of the complaint:

''That immediately after the defendant had failed to
carry out said agreement as aforesaid (to sell the land
to Storey), and on or about the —— day of July, 1907,
the defendant, assuming to act as the agent for said
C. A. Smith, the owner of said land, and representing
that he had authority from said C. A. Smith so to act,
agreed with said Sorenson to obligate the said Smith
to pay said Sorenson said commission, and continued
the employment of the said George Sorenson, and in-
structed him to negotiate further with said J. O. Storey
for the purpose of procuring said J. O. Storey to pay
a higher price for said property,'' etc.

From this allegation it is reasonably to be inferred
that, though Sorenson's employment was terminated
when the original option was declared at an end, he
was subsequently engaged by the defendant to nego-
tiate a sale of the land at a greater price, but upon
the same terms as had been previously agreed upon.
Sorenson's testimony on this issue, to which reference
has been made, tends to substantiate the averment last
quoted. The fourth request having omitted this mat-
ter, no error was committed in refusing to give that
instruction, since its substance was embraced in the
part of the charge that has already been repeated.

9, 10. It is insisted that error was committed in denying the sixth request to instruct the jury, as follows:

"Even if you should find that employment of George Sorenson continued after the first deal with Storey fell through, and should find all of the other facts in favor of plaintiff, said George Sorenson would not earn any commission until he had actually procured a purchaser on terms acceptable to said C. A. Smith. It is not claimed by plaintiff that in the employment of George Sorenson after said deal with Storey fell through the defendant or said C. A. Smith fixed any definite terms upon which said C. A. Smith would be willing to sell the land; [but, on the contrary, it appears that said terms were not finally agreed to on the part of said C. A. Smith until after said C. A. Smith had been assured that there would be no commission to be paid by him or said Kribs to George Sorenson or any other person in said sale, but that the price he was to receive for the property would be net to him]. George Sorenson would not earn any commission until he had actually procured the purchaser for the property on terms acceptable to said C. A. Smith, and therefore, if you find that said C. A. Smith refused to sell the property, except on condition that there should be no commission paid by him or said Kribs, and said Storey communicated said fact to George Sorenson, and thereupon George Sorenson waived all right to any commission and agreed with said Storey to get his pay out of a future sale of said property by said Storey, and thereupon said Storey and those associated with him completed said purchase and entered into a contract for the purchase of the same for $300,000 net to said C. A. Smith, then plaintiff would not be entitled to recover, even though all the other facts were found in her favor."

This request was denied, for the reason that the language embraced within the brackets, as indicated, assumed the existence of a fact which was in dispute.

It is argued by defendant's counsel that, though the instruction requested may have been technically incorrect, it was sufficient to call attention to Sorenson's alleged waiver as set forth in the answer, and, such being the case, the duty was imposed upon the court so to modify the language suggested as correctly to state the law applicable to the issue involved. The legal principle thus involved finds expression in 1 Blashfield's Instructions to Juries (2 ed.), Section 175, page 407, where it is said:

"In some jurisdictions it is held that a request which is properly refused for defects in form or substance may be sufficient to call the attention of the court to the matter upon which an instruction is desired, and make a failure to give an appropriate instruction thereon error."

In support of the text quoted the decisions cited, omitting criminal causes, were rendered by courts in the states of Kansas, Missouri and Texas. In addition to the cases from the states mentioned, the defendant's counsel further cite decisions given upon this subject by the courts of last resort in the states of Kentucky (*Western Union Tel. Co.* v. *Sisson,* 155 Ky. 624, 160 S. W. 168), Massachusetts (*Black* v. *Buckingham,* 174 Mass. 102, 54 N. E. 494), Vermont (*Hazard* v. *Smith,* 21 Vt. 123), and West Virginia (*Carrico* v. *West Va. R. Co.,* 35 W. Va. 389, 14 S. E. 12). "If a request," says a text-writer, "is in part incorrect, or is inappropriate as applied to the facts, the court commits no error in wholly refusing it": Branson, Instructions to Juries, § 101, citing many cases.

Another author discussing the same subject remarks:

"In order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct both in form and substance, and such that the court might give to the jury without modification

or omission. If the instruction, as requested, is objectionable in any respect, its refusal is not error": 1 Blashfield, Instructions to Juries (2 ed.), § 175, p. 402.

The cases cited to uphold the language last repeated, omitting decisions from states where their courts seem to have ruled on both sides of the question, are found in the reports of decisions in the courts of Alabama, Arkansas, California, Colorado, Georgia, Illinois, Indiana, Maine, Maryland, Michigan, New York, Ohio, Oklahoma, Utah and Wisconsin. It will thus be seen that the great weight of authority is opposed to the contention now made with respect to this part of the case.

Our statute, relating to the giving of instructions, reads:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact": Section 139, L. O. L.

"The jury, subject to the control of the court, in the cases specified in this Code, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions" in respect to precautionary matters: Section 868, L. O. L.

In applying these provisions of the law it has been held that, though each party to an action is entitled to have his theory of the cause submitted to a jury, if any evidence has been received tending to support such plan, no failure of the court in this respect would be considered on appeal, except upon the denial of a requested instruction which correctly stated the law applicable to the case: *Cerrano v. Portland Ry., L. &*

*P. Co.,* 62 Or. 421 (126 Pac. 37).   We adopt the rule prevailing in a majority of the states, to the effect that no error is committed in denying a requested instruction which does not correctly announce the law applicable to the case, or which contains or assumes the statement of a controverted fact, though such request may call the court's attention to a particular matter not covered by the general charge.   If a contrary rule obtained, it would not be necessary for counsel carefully to prepare requested instructions, for, if merely calling attention of the court to a particular matter of law or fact were sufficient, then a request to charge on a special subject would be sufficient, though such solicitation was couched in the briefest possible sentence.   Thus, in this instance: "We desire an instruction upon the question of waiver."   Such a course of practice would not be fair to a court, which at the close of a trial has not the time carefully to consider all the matters that might thus be thrust upon it. Unless, therefore, the prayer for an instruction correctly states the law applicable to the case, and makes no improper allusion to controverted questions of fact, and the matters thus urged have not been given in the general charge, when considered in its entirety, no error is committed in denying the request: *Clearwater* v. *Forrest,* 72 Or. 312 (143 Pac. 998); *Kemp* v. *Portland Ry., L. & P. Co.,* 74 Or. 258 (145 Pac. 274); *Pfeiffer* v. *Oregon-Washington R. & N. Co.,* 74 Or. 307 (144 Pac. 762); *Housman* v. *Peterson,* 76 Or. 556 (149 Pac. 538); *Johnson* v. *Portland Ry., L. & P. Co.,* 79 Or. 403 (155 Pac. 375).

11. It is maintained by defendant's counsel that errors were committed in denying their requested instructions as follows:

82 Or.—10

"(16) Plaintiff cannot recover in this case if the original agreement between George Sorenson and F. A. Kribs was for the payment by Kribs to George Sorenson of a portion of the commission he would receive from C. A. Smith on the sale of the land, and if this original contract between George Sorenson and Kribs was never changed.

"(17) If the contract between George Sorenson and Kribs was for the division between Kribs, Sorenson and Storey of the commission which Smith would pay Kribs on the sale, and this agreement was never altered, then plaintiff cannot recover, and your verdict must be for the defendant."

At the request of the defendant's counsel the jury were instructed as follows:

"This action is based on the theory that defendant assumed to hire George Sorenson as a broker for the sale of the land in question for a specified commission of 5 per cent, and represented that he had authority to bind C. A. Smith to such a contract. Therefore I charge you that, if you find that there was no specific agreement between George Sorenson and F. A. Kribs for the payment of 5 per cent commission, but that the amount of the commission George Sorenson was to receive was not agreed upon, then the plaintiff cannot maintain this action, and your verdict must be for the defendant."

When the court had concluded its charge one of the jurors inquired:

"Do we have to find for the full amount?

The court replied:

"This action is brought on a contract, and plaintiff is entitled to 5 per cent of the amount or nothing. The jury would not have any discretion to find an intermediate amount. It is either the full amount or nothing, and to that full amount should be added interest at 6 per cent, from the 31st of October, 1909, down to this date."

The defendant's counsel interposed no objection to the court's reply to the juror's inquiry.

The part of the charge so given at the solicitation of defendant's counsel is inconsistent with their requests last referred to, which were denied. In respect to the issue designed to be embraced in the sixteenth request, the defendant testified that, under the terms of the original agreement for the sale of the land at $187,000, the commission to be paid by the owner for procuring Storey as a purchaser was to be divided between the witness and Sorenson. Kribs further testified that after the original option was declared forfeited the broker was advised thereof, and notified that his services in negotiating contracts relating to the sale of the land were ended. Having acquiesced in the court's instruction that the plaintiff was entitled to the entire commission of 5 per cent of the selling price and interest thereon or nothing, the defendant has no reason to complain because of the refusal to give the sixteenth and seventeenth requested instructions.

12. A great part of the brief of defendant's counsel is devoted to what is termed the "broad equities" of the case. Thus it is stated in effect that by reason of Sorenson's representations made to Storey that, notwithstanding the limitation of 60 days specified in the original option, he could have all the time he desired in which to examine the lands offered for sale, in order to determine their value; that relying upon such statements Storey neglected to take the necessary precaution to protect his rights, whereby he incurred an expense of more than $2,000 in cruising the timber and lost $63,000, which profit he could have made by a resale of the property; that the ultimate contract for the sale of the land was made with Smith by Brat-

nober, which agreement was brought about by Storey alone as the procuring cause, and the latter had only the right of a broker to negotiate a resale of the premises within a specified time; that such agency was secured by Storey, who hoped to obtain a compensation for the loss he had thus sustained; that it is undisputed, if Kribs is obligated to discharge the judgment rendered herein, Storey, in addition to the damages he has sustained in consequence of Sorenson's representations, will be obliged to repay the amount recovered in this action, thereby entailing an entire loss of about $85,000, and thus demonstrating the unreasonableness of the conclusion reached by the jury in the trial of this cause.

The plaintiff's counsel contend, as alleged in the complaint, and as their evidence tended to show, that the land was sold by Smith to Storey, in the name of the Storey-Bracher Lumber Company and Bratnober, with whom Storey had associated, and that Sorenson had negotiated with Storey in effecting a sale of the premises, which fact appears to be evidenced by the written contract therefor, from which the jury might reasonably have conclued that the broker was entitled to the commission demanded. The "broad equities" thus stated undoubtedly afford cogent reasons, when uttered, as they probably were, to the jury in order to obtain a favorable verdict for the defendant; but in a law action, where on appeal only alleged errors duly assigned can be considered, the argument now adduced has no place.

Believing no prejudicial error was committed at the trial, it follows that the judgment should be affirmed; and it is so ordered.        AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE BURNETT concur.