## Western Union Telegraph Company v. Baker.

(Decided November 15, 1916.)

### Appeal from Breathitt Circuit Court.

Telegraphs and Telephones—Non-delivery or Delay in Delivery of Telegram—Action for Damages—Evidence—Peremptory Instruction.—In an action against a telegraph company to recover damages for mental suffering caused the plaintiff by its non-delivery of a first telegram intended to inform him of the death of his

mother and enable him to be present at her funeral and burial; and its delay in delivering a second telegram sent after his failure to get to the funeral, intended to inform him of his mother's death in time to enable him to reach the place of the funeral, there view her remains and accompany them to an adjoining county for burial; as it was made to appear from the evidence that the first telegram, because of plaintiff's absence from his home, was impossible of delivery and that the second telegram, or notice of its contents, was received by him in time to have enabled him to take a train that would have gotten him to the place of his mother's funeral in time to there view her remains and accompany them to the place of burial, that he failed to take such train and such failure was alone due to his own negligence in delaying his departure for the purpose of going on a later train that he knew would not reach the place of the funeral in time for him to there view the remains and accompany them to the place of burial; held, that the defendant company was entitled to a peremptory instruction directing a verdict in its behalf, and the refusal of the trial court to give such instruction constitutes reversible error.

RICHARDS & HARRIS, O. H. POLLARD, CHESTER GOURLEY and A. T. BENEDICT for appellant.

E. C. HYDEN and McGUIRE & McGUIRE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, D. C. Baker, recovered in the court below of the appellant, Western Union Telegraph Company, a verdict and judgment for $500.00 by way of damages claimed on account of its alleged negligence in failing to deliver a telegram informing him of his mother's death and which, if delivered within a reasonable time, would have enabled him, as further alleged, to be present at her funeral and burial. Appellant's dissatisfaction with the judgment led to the present appeal.

It appears from the record that appellant's mother died in Indianapolis, Indiana, July 19, 1910, and that her remains were shipped by rail to the town of Berea, Kentucky, where they arrived about noon, July 20, 1910. The funeral occurred at two p. m. on the 20th in Berea, at the residence of her son, J. K. Baker, and on the 21st of July the remains were carried in a hearse to the town of McKee, in Jackson county, twenty-five miles from Berea, for burial. The burial took place at McKee on the 21st, about or just before dark. On July 19th, the day before the mother's remains reached Berea, J. K.

Baker, her son and appellee's brother, filed with one Bower, appellant's operator and the station agent of the Louisville & Nashville Railroad Company at Berea, the following telegram for transmission to appellee at his home in the city of Jackson, Breathitt county:

"Come to Berea at once your mother is dead."

As appellant does not own or operate telegraph lines between Berea and Jackson, this message had to be sent from Berea to Lexington and from that city over a line of the Postal Telegraph Company to Jackson. Appellant's operator, Bower, testified that the above message was not received by him until 6:12 o'clock p. m. July 19th; that he turned it over to the assistant dispatcher, Stickrod, by whom it was transmitted to Lexington to be from there forwarded to Jackson. J. K. Baker, the sender of this telegram, was quite indefinite as to the time of its delivery to Bower, saying in one part of his testimony that he was of the belief that it was handed him about five o'clock p. m. and later between five and six. It appears, however, from the testimony of J. E. Stivers, then and now the operator of the Postal Telegraph Company at Jackson, that the above message was never received by him or at his office; and also from his testimony, as well as that of the appellee, that the telegram, if received in due course, could not have been delivered to the latter, because he was not in Jackson after six o'clock on the morning of July 19th, until after the 22nd of July; that is to say, appellee left Jackson at six o'clock a. m. July 19th as a brakeman on a freight train for Lexington, which train did not reach Lexington until six o'clock p. m. of that day. It further appears from the testimony of appellant's operator Bower and its operator at Lexington that by a custom of the Postal Telegraph Company, its office at Jackson was opened at seven a. m. and closed at six o'clock p. m. each day. Consequently, messages attempted to be sent to that office after six p. m. were not received, or if received not delivered until after seven o'clock the following morning.

While appellee's evidence may be said to conclusively show that the message left by J. K. Baker with appellant's operator at Berea to be sent appellee, was never received at the office of the Postal Telegraph Company at Jackson, it nevertheless fails to show that if delivered at the Jackson office it would or could have

been delivered to appellee in time for him to have reached Berea for his mother's funeral. Indeed, it appears that if the message had reached Jackson and appellee had been at his home there on the night of July 19th, the only train on which he could have gone to Berea on the 20th in time for his mother's funeral, left at seven a. m. that day, the hour for opening the Postal Telegraph office at Jackson, which would not have allowed the delivery to him of the message in time for him to take the train.

When appellee failed to reach Berea July 20th for his mother's funeral, his brother, J. K. Baker, again saw appellant's agent, Bower, informed him of appellee's non-arrival and asked him if he would not make another effort to find him. This was at 1:54 o'clock p. m. July 20th. Bower said he would do so and thereupon sent the following telegram to P. F. Kesheimer, the Lexington & Eastern Railway Company's master, of trains at Lexington:

"Please advise Mr. D. C. Baker who is either a brakeman or conductor on your road that his mother died in Indianapolis. Remains reached Berea today and will leave for McKee at five o'clock Thursday for burial. Want him to come to Berea tonight. Request him to advise if coming."

Kesheimer was out of Lexington on some one of the Lexington & Eastern's lines when this telegram reached his office at Lexington. It was, however, received by a clerk in the office, who, together with the dispatcher, in the absence of Kesheimer attempted to ascertain the whereabouts of appellee, who was in Lexington the whole of the 20th, and give him the message, but they were unable to find him. Kesheimer, according to his testimony, returned to Lexington between six and seven o'clock the evening of the 20th, made immediate effort to locate appellee, found that he was out in the country and that the persons with whom he was taking dinner had no telephone. However, he said that about the time he made these inquiries, that is between six and seven o'clock p. m., appellee walked into his office and Kesheimer then handed him the telegram.

In giving his testimony appellee admitted that he was in or about the city of Lexington from the time of his arrival there at six p. m. on the 19th of July until the morning of the 21st of July and that between seven

and eight o'clock on the evening of the 20th he learned from one Dan Morris of the receipt at Kesheimer's office of the telegram sent by his brother on the afternoon of the 20th for the purpose of acquainting him with the death of his mother and the time of her burial. Appellee also admitted that although informed by Morris of the telegram between seven and eight o'clock on the evening of the 20th, he did not go to Kesheimer's office to get it until six o'clock on the morning of the 21st of July, but then received it and at the same time obtained from Kesheimer a pass for use on the Lexington & Eastern Railway train which left Lexington at 7:05 o'clock a. m. July 21st. After seeing Kesheimer he called his brother up over the telephone and informed him when he would reach Berea and then learned that his mother's funeral had occurred the day before, July 20th, and that her remains would be taken that day to McKee for burial. Appellee then took the 7:05 Lexington & Eastern train, upon which he reached Berea at noon, where he obtained a horse and immediately started for McKee. About five miles before reaching McKee he overtook and passed the hearse containing the remains of his mother. He arrived at McKee in advance of the hearse and was present at the burial. When the hearse reached the cemetery the coffin was opened that appellee and others might have an opportunity to view the remains of his mother. This was followed by a prayer offered by a lady teacher and, the prayer, by the interment.

In our opinion, appellee's evidence fails in two essential particulars to show in him a right of recovery by reason of any failure on the part of appellant to transmit the telegram intended to reach him at Jackson. First, he rested his case on the fact that appellant did not turn over the telegram of July 19th to the Postal Telegraph Company at Lexington for transmission and delivery to him at Jackson. This fact was not satisfactorily established by his evidence. Second, his evidence failed to show that if the telegram had reached Jackson within a reasonable time it would or could have been delivered to him. It appears from the evidence that he was not at Jackson on the day or night of the 19th or on the day of the 20th of July; that on the 19th he was somewhere on a freight train between Jackson and Lexington and on the 20th in or about Lexington

and that his whereabouts was not known to the operator
of the Postal Telegraph Company at Jackson. It will
not do to conjecture or surmise that there might have
been some means employed by the Jackson operator to
find him. There must have been a showing that there
was a reasonable certainty or probability of his being
able to do so if the telegram had reached his office. No
such showing was made and in the absence thereof it
cannot be said that any negligence on the part of ap-
pellant with respect to the sending of this telegram was
the proximate cause of appellee's failure to be apprised
of his mother's death or of his failure to attend her fun-
eral. It is equally clear that if the telegram to the Lex-
ington & Eastern Railway Company's master of trains,
transmitted from Berea at 1:54 o'clock July 20th, had
been received by appellee in the briefest time possible,
it would not have enabled him to get to Berea in time to
be present at his mother's funeral, which occurred that
afternoon a few minutes after the telegram was
sent, but he might have gotten there before his moth-
er's remains left Berea on the morning of the 21st for
McKee, and this he might have done after receiving in-
formation of the telegram on the night of July 20th.

Kesheimer, Bower and other witnesses for appellant
testified that an east-bound Chesapeake & Ohio train at
that time left Lexington at 8:40 p. m. and connected at
Winchester with a Louisville & Nashville train for
Knoxville, which passed through Berea about 11:20 or
11:40 at night and invariably stopped to put off or take
on passengers. Kesheimer testified that when appellee
came to his office and inquired about the telegram sent
from Berea on the afternoon of the 20th it was between
six and seven o'clock. If it was not later than seven
o'clock appellee had an hour and forty minutes within
which to get ready and take the C. & O. train leaving
Lexington at 8:40 p. m., which would have carried him
to Winchester, from which the L. & N. train would have
taken him to Berea by 11:20 or 11:40 o'clock that night,
many hours before the hearse was started with his moth-
er's remains from Berea to McKee. It is true appellee
testified that he did not go to Kesheimer's office on the
night of July 20th, as testified by the latter, but first
went there at six o'clock on the morning of the 21st,
when he first saw the telegram, and then procured from
Kesheimer free transportation over the Lexington &

Eastern Railway, upon which he left Lexington at 7:05 o'clock a. m. on the 21st for Berea. If it be conceded that appellee was correct in the statement that he did not go to Kesheimer's office on the night of the 20th but on the morning of the 21st before taking the train for Berea, there still appears in the record his admission that he learned from Dan Morris, between seven and eight o'clock on the night of the 20th, of Kesheimer's receipt of the telegram from Berea on the afternoon of the 20th and that its object was to advise him of his mother's death and also the time of her funeral and burial, from which it would follow that he had forty minutes or more time in which to take the C. & O. train that would have enabled him to leave Lexington at 8:40, go to Winchester and there take the L. & N. Knoxville train, which would take him to Berea at 11:20 or 11:40 that night. It is not to be overlooked, too, that appellee admits that he knew that the time of departure of the C. & O. train was 8:40 that night. From this uncontradicted evidence with reference to the time of the departure of the C. & O. train on the night of the 20th and the ability of appellee to have gone thereon from Lexington to Winchester and from the latter place to Berea by 11:20 or 11:40 that night, it is clear that he was not prevented by any negligent failure to deliver the second telegram from getting to Berea in time to have viewed her remains there and to have accompanied the remains of his mother to McKee for burial.

It is useless to speculate as to how much of the mental suffering experienced by appellee was attributable to his failure to be present at his mother's funeral, or what part of such suffering was due to the disagreeable condition in which he saw her remains at the place of burial, resulting from the drive over the rough roads between Berea and McKee, of which he might have been relieved could he have seen the body before it left Berea. Such things, however painful to his feelings, cannot enter into the decision of the case, because in no way chargeable to any negligence on the part of appellant. Indeed, it seems clear from the evidence that the sole cause of appellee's failure to see his mother's remains before they left Berea, was his failure to take the C. & O. train which left Lexington at 8:40 on the night of July 20th, which would have carried him to Winchester in time to connect there with the Knoxville train of the

Louisville & Nashville Railroad, upon which he would have reached Berea at 11:20 or 11:40 that night. Appellee's conduct in remaining in Lexington until the morning of July 21st and then taking the 7:05 L. & N. train for Berea is well calculated to create a suspicion that his purpose was to obtain the benefit of free transportation on the latter train, which he could not have secured for the C. & O. train upon which he might have gone on the night of the 20th. In any event, it was his negligence in failing to take the C. & O. train that prevented him from arriving at Berea in time to see his mother's remains there and accompany them to McKee for burial.

For the reasons indicated, appellant was entitled to the peremptory instruction for a directed verdict in its behalf, asked by it at the conclusion of all the evidence, and the refusal of such instruction by the trial court constitutes reversible error.

In view of the above conclusion, it is unnecessary to discuss the objections made by appellant to the instructions that were given by the court, further than to say that none of them should have been given, the only instruction required being, as previously stated, one directing a verdict for the appellant.

As the question already decided is the material and conclusive one in the case, the decision of others incidentally presented by counsel is deemed unnecessary.

Judgment reversed and cause remanded for a new trial consistent with the opinion.