## Western Union Telegraph Company v. Melvin.

### (Decided May 8, 1917.)

### Appeal from Johnson Circuit Court.

1. Telegraphs and Telephones—Failure to Deliver Messages—Mental Anguish.—The plaintiff procured for hire the defendant telegraph company to send to his daughter, who was sick, $15.00, with a view of having her come to the plaintiff's home. The daughter was married, and she and her husband lived at the place to which the money was sent. She did not receive information of the money having been sent for several days: Held, that the plaintiff could not recover in a suit against the telegraph company for such failure for mental anguish which he claims to have suffered because of the money not being promptly sent.

2. Telegraphs and Telephones—Mental Anguish—Recovery For.— Recovery of damages for mental anguish growing out of a breach of contract, and in the absence of physical injury, was not permitted at common law, but some courts, including Kentucky, permit a recovery for mental anguish sustained in cases of a breach of contract to send the telegram whereby one is prevented from attending the bedside of a near relative, or funeral after death, and in some other cases where mental anguish would naturally

follow a breach of the contract, but the exception to the common rule should not be extended so as to include other cases not confined within the present rule upon the subject.

J. J. MOORE and ALBERT T. BENEDICT for appellant.

D. J. WHEELER and H. S. HOWES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The plaintiff (appellee) recovered a judgment against the defendant (appellant) in the court below for the sum of $350.00 for damages alleged to have been suffered by him because of the negligent failure of the defendant, on October 28, 1914, to promptly transmit $15.00 from Paintsville, Kentucky, to Alger, Ohio, to the plaintiff's daughter, Mrs. Goldie Lemasters, pursuant to a contract that day entered into between plaintiff and defendant.

The record has been filed in this court with a motion for an appeal. Among the errors relied upon are that the court erred in refusing to instruct the jury to return a verdict for the defendant; that the court improperly instructed the jury; that the verdict is contrary to the evidence; and that the court erred in overruling the motion made by the defendant for a judgment in his favor notwithstanding the verdict. We will notice such of these in the course of the opinion as we deem necessary to a determination of the case.

The facts are that the plaintiff's daughter had given birth to a child on October 16, 1914, and on the 21st day of that month her husband telegraphed the plaintiff to come at once. He did not go, and on the 28th his daughter wired him to send her sufficient money to come to his home, as she was sick and wanted to make that trip. About three o'clock in the afternoon of that day, he made the contract with defendant, and in consideration of 65 cents paid to it at the time it undertook to transmit by wire from Paintsville, Kentucky, to the home of the daughter at Alger, Ohio, the sum of $15.00, and, according to plaintiff's contention, supported by evidence, the agent of the defendant at Paintsville agreed to do this within the space of one hour. The defendant had no money transfer office at Alger, Ohio, but did have one in the city of Lima, Ohio, not far therefrom, and within an hour after it received the money from the plaintiff and agreed to transmit it it notified its office at Lima, Ohio, but that was after banking hours. By nine o'clock,

or directly thereafter, on the morning of the 29th of October, a bank at Alger, Ohio, was directed to pay to the daughter, without identification, the sum of $15.00. The agent of the defendant at the latter place was also notified of the transaction, but neither the bank at that place nor the agent of defendant could locate the daughter, as she had no telephone in her home and seems to have been a stranger in that place, but a postal card was put into the mail notifying her to call at the bank and get the money. However, it appears that she did not receive the information until November 1, at which time she telegraphed the plaintiff at Paintsville, Kentucky: "Everything understood; will get money at once. Will be home as soon as possible.—Goldie."

She arrived at the home of plaintiff on November 3, and claiming that defendant had violated its contract, and that he had suffered great mental pain and anguish as a consequence thereof, the plaintiff filed this suit to recover the sum of $499.00, with the result indicated.

The answer admitted the contract, except it denied that there was any agreement to transmit the money within any specified time. It denied negligence in its transmission and the alleged mental anguish which plaintiff claims to have suffered, and put in issue the damages sought to be recovered.

There is no allegation in the petition that the daughter either could or would have come to the plaintiff's home if she had immediately received the money, nor is there any statement in the petition that she was unable to get the money with which to make the trip from any other source. Because of the absence of such allegations, it is insisted that the demurrer filed to the petition should have been sustained.

Under the rule laid down in the cases from this court of Howard v. Western Union Telegraph Co., 119 Ky. 625; Western Union Telegraph Co. v. Sisson, 155 Ky. 624, and Western Union Telegraph Co. v. Baker, 172 Ky. 215, the petition should have contained such allegations, for the very foundation of the action is that because of defendant's alleged negligence the plaintiff was deprived of the pleasure and gratification of his daughter visiting his home. If, notwithstanding the contract may have been complied with in every particular, such visit could not have been made, defendant's negligence in failing to do so did not produce the condition out of which the al-

leged cause of action arose.  Likewise, if the defendant had failed to comply with its contract, but the daughter could have provided herself with the means to make the trip, the failure of which is complained of, but she declined to do so, the defendant's negligence could not be said to be the producing cause of such failure. According to our view, there is still a more serious objection to the judgment.  As stated, the sole ground alleged for recovery is the alleged mental anguish which plaintiff suffered because of his daughter not promptly receiving the money which defendant had agreed to send.

At common law, and in a majority of the states at the present time, compensatory damages for mental anguish unaccompanied with physical injury is not an element of damages for breach of contract.  37 Cyc. 1775, and authorities therein cited.  Some of the states, however, including Kentucky, have departed from that rule and permit compensatory damages for mental anguish for breach of a contract to transmit a telegraphic message whereby one is deprived from being present at the bedside of a near relative before death, or from attending the funeral after death, which doctrine was first promulgated as a departure from the above common law rule by the Supreme Court of Texas, in 1881.  37 Cyc. 1776.  It was adopted by this court in the case of Chapman v. Western Union Telegraph Co., 90 Ky. 265, and has been consistently followed in all subsequent cases.  This court has pressed the departure a step farther, as will be seen from the cases of Postal Telegraph Company v. Terrell, 124 Ky. 822, and Thurman v. Western Union Telegraph Co., 127 Ky. 137.

In the Terrell case the plaintiff's husband had wired the father of his wife in Memphis to meet the latter at a depot in that city where a train arrived in the night time. She had two small children with her, and on account of the train being a couple of hours late she did not arrive until two o'clock a. m.  The telegram was not sent in time for the father to receive it so as to enable him to meet the train.  The wife was very much worried, frightened and mentally disturbed, and under the circumstances this court held that her mental condition was the natural consequence of the failure of her father to meet her, which was the proximate result of the negligence of defendant, and sustained her cause of action against the telegraph company to recover damages for the injuries complained of.  After reviewing many cases from this

and other courts, and summing up its final conclusions, the court in its opinion in that case said:

"In the case at bar the telegram apprised the defendant that mental suffering might reasonably be anticipated from the failure to deliver the telegram, and to allow mental suffering to be recovered is only to allow such damages as the parties should reasonably have anticipated to result from the breach of the contract."

In the Thurman case, Mrs. Thurman sent a telegram to her husband from Louisville to Chicago, notifying him that their infant daughter had the smallpox and had been sent to the pesthouse. The husband, who seems to have been a traveling man, was in Chicago a sufficient time to have received the telegram, and was at the place to which it was addressed, but through some negligence of the telegraph company he did not receive it, and left that city and was away some four or five days, not knowing of the sickness of his daughter, or the disease with which she was afflicted or the disturbed condition of his wife by reason thereof. The information showing the condition was imparted to the telegraph company by the face of the message. The conclusion of the court in sustaining the action brought by the wife to recover for her mental suffering, as well as the reasons therefor, are thus stated in the opinion:

"The fact that she signed the message 'Wife' proved the relationship she sustained to the person to whom it was addressed. The familiarity exhibited by the use of the name 'Nellie' also indicated either that the person referred to was a child of the 'wife' and her husband, Harry Thurman, or that she sustained to them a close family relationship, and the further facts that 'Nellie' had the smallpox and had been sent to the pesthouse demonstrated the dire distress of the sender of the message, and her urgent need of some sort of assistance from, if not the presence of, the absent husband. If, as alleged in the petition, appellee's negligence in failing to send or deliver the telegram in question prevented the return of appellant's husband to Louisville, and deprived her of his superior judgment, advice and capacity to afford consolation in the emergency that thus suddenly confronted her, thereby causing her great mental suffering as they were well calculated to do, we fail to see any good reason for holding that she cannot recover damages therefor."

In view of the fact that mental anguish as an element of damage is something of such an uncertain and immeas-

urable nature, easily testified to and most difficult to disprove, and the further fact that it involves a search through the realms of psychology, and its extent being impossible of ascertainment by any of the fixed and recognized rules of evidence, we are not disposed to extend the exceptions to the rule against allowing recovery for it beyond what we have already done in the cases referred to.

In the case of Robinson v. Western Union Telegraph Co., 24 Ky. Law Reporter 452, the plaintiff had sent a telegram to a firm in Louisville reading: "Wire me one hundred. Waive identification. Be home last of week." The telegram was not promptly sent, and the plaintiff, who was the sender, being without money, among strangers, and away from home, filed the suit setting forth the facts, seeking to recover $1,000.00 as damages "to compensate him for the mental anguish and suffering he endured by reason of defendant's wrongful conduct." This court denied his right of recovery, and in doing so, *inter alia,* said:

"This court is committed to the doctrine that a telegraph company is answerable in damages for mental suffering caused by its failure to deliver a social message, by reason of which the sender or person addressed is prevented from attending at the bedside, at the death or at the funeral of a near relative. (Chapman v. W. U. Tel. Co., 90 Ky. 265, and subsequent cases.) We have not applied the doctrine, however, further than to the class of cases referred to, and then the liability has been restricted to those of the first degree of relationship. It may be difficult to distinguish that class of cases from the one at bar in point of reason. But it should be borne in mind that the general rule is, in actions for breach of contract, damages for mental suffering occasioned by the breach are not recoverable. The telegraph cases, to the extent allowed at all, appear to constitute an exception to this rule. We say "to the extent that they are allowed at all," for all telegrams are not subject to the rule. Telegraphic messages of a business nature should be, and are, subject to the law applicable to other business transactions. The measure of recovery is then regulated by the nature of the transactions involved, but in every case subject to those cardinal rules applicable to the defining of the measure of damages, to-wit, that the damages must be proximate, certain, and the necessary result of the breach. They must not be conjectural nor speculative."

In the two Texas cases of Ricketts v. Western Union Telegraph Co., 30 S. W. 1105, and DeVoegler v. Western Union Telegraph Co., *idem.* 1107, facts almost identical with those involved in this case are presented. A mother in each case contracted with the telegraph company whereby it agreed to send money to her sons from Sherman, Texas, to Poughkeepsie, New York, and which the company agreed to do within two hours. It is also claimed that it was informed at the time of the urgent necessity for the money to be quickly sent. The contract was violated and the mother brought suit for damages for her mental anguish growing out of such violation. In denying her right to recover for mental anguish the court said in the Ricketts case:

"The fact that a loving mother, in the dark hours of midnight, may conjure up a thousand forebodings of evil to her distant boy, when he is in no real danger of losing a single hour's repose, may furnish trouble enough to her; yet it gives no solid basis for damages in a practical business transaction."

The court then continues by quoting from the case of Rowell v. Telegraph Co., 75 Tex. 26, 12 S. W. 534, as follows:

"Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract, in most cases, but the cases are rare in which such emotion can be held an element of damages resulting from the breach. For injury to the feelings, in such cases, the courts cannot give redress. Any other rule would result in intolerable litigation."

This court, in the Robinson case, *supra,* referred to the first two Texas cases above and quoted with approval the excerpt which we have taken from the Ricketts case.

In the case of Western Union Telegraph Co. v. Reid, 120 Ky. 231, an infant child of the appellee was suffering from a malady which produced great and excruciating pains. The attending physician did not have at hand instruments by which the suffering of the child could be relieved, and at the instance of the father sent a telegram to a physician in a neighboring town to procure his immediate attendance with the necessary instruments to bring about the relief of the child from its suffering. Through the negligence of the company, the telegram was not promptly transmitted, and the father sued to recover for mental anguish in witnessing the suffering of his child, which was claimed to be the proximate result of defend-

ant's negligence. This court, on appeal, reversed the judgment recovered by the plaintiff in the court below, and declined to allow the damages sued for.

In the instant case it does not appear that the daughter of plaintiff was in a dangerous condition. Plaintiff had been summoned to her bedside on the 21st of October by a telegram from her couched in urgent language. His anxiety to be with her does not appear to have been sufficient to induce him to make the trip. Neither allegation nor proof in the case shows that the daughter was severely sick or that the defendant possessed any such information. It is true that plaintiff states in his testimony: "I just expected to hear of her being dead every minute," but this distressing expectation was not founded on facts nor did it influence him to undertake a trip to the bedside of what he supposed to be a dying daughter. This is a plain case of transmitting money by wire, and is a business transaction pure and simple, and to extend the rule allowing recovery for mental anguish further than what has already been done by this court, as demonstrated by the cases, *supra,* as we are called upon to do in this case, would be carrying the exception to the general rule to unreasonable limits and to extents for which no legal justification could be found. The Robinson and Reid cases, *supra,* as well as the Texas cases referred to, forbid that we should take the step, and which we are disposed to heed and therefore decline to do so.

It therefore results that the court should not have submitted to the jury the question of plaintiff's mental anguish as an element of damages. There is evidence, however, that the contract as entered into was not carried out according to its terms. For this violation, as established by the proof, the plaintiff is entitled to recover nominal damages, which should not exceed the price of the telegram. Upon another trial, if the evidence should be substantially the same, only the question of nominal damages, limited as indicated, should be submitted to the jury.

Wherefore, the motion for the appeal is sustained and the appeal granted and the judgment reversed for proceedings consistent with this opinion.