208      HANCOCK v. YUNKER *et al.*      [Sept. T.

Syllabus.

# CHARLES L. HANCOCK
## *v.*
# JOHN YUNKER *et al.*

1. CONTRACT—*whether creating a corporate or individual liability.* Where a lease is made to a *de facto* corporation by its corporate name, and all the covenants for the payment of rent, taxes, rates, for care and repairs, and surrender of possession, are expressed to be by it, its associates, successors and assigns, and at the conclusion it recites that the lessor signs in his own proper person, and that the party of the second part, the corporation, signs through its trustees, it will not create any personal liability on the trustees signing, but a corporate liability.

2. AGENCY—*liability of agent on contract executed by him.* An action can not be maintained against an agent on an instrument executed by him in behalf of his principal, unless it contains apt words to charge him personally, even though he acts without authority or in excess of authority; but he may become personally liable on a contract containing apt words to bind him, and then the words descriptive of his agency will be rejected as surplusage.

3. REMEDY *against agent who acts without authority.* The remedy against one for falsely assuming to act as agent of an individual or a public corporation, is an action on the case and not on the contract made by him.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Appellant sued appellees in an action of covenant in the court below, on an instrument of which the following is a copy:

"This indenture, made this 3d day of January, A. D. 1866, between Charles L. Hancock, of Chicago, Cook county, Illinois, of the first part, and the Chicago Literary Association, of the city of Chicago, Cook county, Illinois, of the second part,

"*Witnesseth:* That the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by said party of the second part, their associates, successors and assigns, has demised and leased to the party of the second part (the premises mentioned in the declaration). The lessees have liberty to make alterations and improvements to fit the premises for their occupancy, * * * * * and to underlet said premises to other societies, and to sell or allow to be sold all kinds of wines, beer or liquors. Term of lease from February 1, A. D. 1866, until February 1, 1871. And the said party of the second part, in consideration of leasing the premises aforesaid by the said party of the first part, covenant and agree with the said party of the first part, his heirs, executors, administrators and assigns, to pay the said party of the first part, as rent for said premises, $2400 per year, payable monthly in advance, in sums of $200 each. And that said second party has received said demised premises in good order and condition, and that at the expiration of the term of this lease mentioned, or sooner determination thereof by forfeiture, they will yield up said premises to said party of the first part in as good condition as when the same were entered upon by the said party of the second part, loss by fire or inevitable accident or ordinary wear excepted; and also will keep said premises in good repair during the lease, at their own expense.

14—83D ILL.

" It is further agreed by said party of the second part, that neither they nor their legal representatives will underlet said premises, or any part thereof, or assign this lease, without the written assent of said Hancock thereto, except as above provided; and the said Chicago Literary Association, for themselves, their associates, successors and assigns, agree, further, to pay all water rents, etc., during the term.   *   *   *

" (Usual clause of forfeiture for non-payment of rent.)

" Witness the hands and seals of the parties aforesaid, to-wit: the said party of the first part in his own proper person, and that of said society through their trustees.

|                                          |         |
|------------------------------------------|---------|
| "CHARLES L. HANCOCK,                     | [seal.] |
| "A. WEINBERG,                            | [seal.] |
| "JOHN SHROEDER,                          | [seal.] |
| "JOHN YUNKER, Pres.,                     | [seal.] |
| "ISAAC PFLAUM, Sec'y,                    | [seal.] |
| "DR. CHARLES LUEDICKE, Treas.,           | [seal.] |
| "CHR. H. JULIUS,                         | [seal.] |
| "JOHN J. WEBER,                          | [seal.] |

"Trustees of the Chicago Literary Association."

Plaintiff, himself, testified, showing possession and use of the premises under the lease, the payment of rent, on several occasions for which he gave his receipt to " The Chicago Literary Association," and that there was rent and interest thereon due him at the time of testifying, amounting to $3212.33.

Defendants gave in evidence the following:

" This certifies, that at a meeting held on the first day of January, in the year of our Lord one thousand eight hundred and sixty-six, at the house known as Number 158 Madison street, in the city of Chicago, in the county of Cook, in the State of Illinois, Charles Luedicke, John Yunker, John J. Weber, Alexander Weinberg, Isaac Pflaum and Christian H. Julius, all being citizens of the United States and citizens of the State of Illinois, and of full age, did associate themselves into a society, under and by virtue of an act entitled 'An act for the incorporation of benevolent, educational, literary, mu-

sical, scientific and missionary societies, including societies formed for mutual improvement or for the promotion of arts,' passed by the General Assembly of the State of Illinois, and approved February 24, 1859. The name and style of said society, by which the same shall be known in law, is 'Chicago Literary Association.' The same is and shall be located and doing business in the city of Chicago, in the county of Cook, State of Illinois, and the object and purpose of said society is mutual improvement of its members, and promoting literary objects, by founding a library and reading room for the free use of the members of said society.

" And this further certifies, that at the meeting the following persons were elected as the officers of said society for and during the first year of said society, said term commencing with the first day of January, 1866, to-wit: for president, John Yunker; for secretary, Isaac Pflaum; for treasurer, Charles Luedicke; and for trustees, Christian H. Julius, Alexander Weinberg, John J. Weber, Isaac Pflaum, Charles Luedicke, and John Yunker.

" In witness whereof we have hereunto set our hands and seals this second day of January, A. D. 1866.

Signed,          "CHARLES LUEDICKE,          [seal.]
                 "JOHN YUNKER,              [seal.]
                 "ISAAC PFLAUM,             [seal.]
                 "CHR. H. JULIUS,           [seal.]
                 "JOHN J. WEBER,            [seal.]
                 "ALEXANDER WEINBERG."      [seal.]

(Certificate of acknowledgment, dated January 3, 1866. Certificate of the Secretary of State of Illinois, that the above is a true copy of the articles of incorporation of the Chicago Literary Association, filed in his office January 6, 1866.)

Defendants also offered to prove that a duplicate copy of the certificate or articles of incorporation was, on the 3d day of January, 1866, filed in the office of the recorder of Cook county, and that the records of the recorder had been destroyed by fire, but this was, on plaintiff's motion, excluded by the court, to which defendants excepted.

Defendants also offered to prove that said literary association, immediately after organization, purchased property and furnished a hall and library, and fitted up a reading room, for the purpose of showing *user* as a corporation; but this, also, was, on motion of plaintiff, excluded by the court, to which defendants excepted.

Other evidence was given by defendants, to which it is unnecessary to refer.

By agreement of parties, the issues were tried by the court without the intervention of a jury. Judgment was given for the defendants, and the plaintiff brings the case to this court by appeal.

Mr. EMORY WASHBURN, Jr., for the appellant.

Messrs. BARKER & BUELL, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Two questions are presented by this record for our determination:

*First*—Does the covenant in the lease to pay rent purport to be the covenant of the defendants, individually?

*Second*—If the defendants did not, in fact, bind a legally organized corporation by the terms of the lease, are they, themselves, liable to an action of covenant upon it?

As to the first point, we think it clear the covenants in the lease, on behalf of the lessee, do not purport to be the covenants of the defendants, individually. *N. W. Distilling Co.* v. *Brant,* 69 Ill. 658. The case is not analogous to *Powers* v. *Briggs et al.* 79 Ill. 493, and other cases of like tenor cited by the counsel for the plaintiff.

The evidence shows that "The Chicago Literary Association" was organized as a corporation, *de facto*, at least. It was the lessee, and by it, its associates, successors and assigns, are all the covenants that relate to the payment of rent, taxes, rates, care and repair of the premises, and surrender of possession, etc., to be performed. And, at the conclusion of the lease, it

is recited, the party of the first part, the plaintiff, signs in his own proper person, and the party of the second part, which is " The Chicago Literary Association," signs " through its trustees." It is thus seen, the entire phraseology of the instrument expressly excludes the idea of an intentional personal liability, and is such as is appropriate and ordinarily used to express corporate liability.

Upon the second point, there is no doubt that " the signature of an agent amounts to an affirmation that he has authority to do the particular act, or, at all events, that he, *bona fide*, believes himself to have that authority." Story on Agency, § 264. But the question here is not whether these defendants may be held liable to the plaintiff in a *proper form of action*, but whether they are liable in *this form of action*—*i. e.*, covenant upon the lease.

Story, in the work just quoted from, § 264 a, says: " It seems clear that in no case can an agent be sued on the very instrument itself, as a contracting party, unless there are apt words therein so to charge him. Thus, if a person acting as agent for another should, without authority or exceeding his authority, make and execute a deed in the name of his principal, and not in his own name, the agent would not be liable thereon, although it would not bind the principal." But he further says, where there are apt words which may charge him personally, and yet he signs the same, in his own name, as agent of another, the question may be presented under a different aspect, and he gives this example: " If an agent should, without due authority, make a promissory note, saying in it, ' I promise to pay,' etc., and sign it C D, by A B, his agent, or 'A B, agent of C D,' in such a case may the words as to the agency be rejected, and the agent be held personally answerable as the promisor of the note?" " Upon this point," he says, " the authorities do not seem to be entirely agreed." The same. in substance, will be found in Chitty on Contracts (11 Am. Ed.), 314. See, also, *Stetson* v. *Patten*, 2 Greenleaf, 358; *Ballou* v. *Talbott*, 16 Mass. 461; *Delius* v. *Canthorn*, 2 Dev. 90; *Abby* v. *Chase*, 6 Cush. 56, 57; *Moor* v. *Wilson*,

26 N. H. 432; American Leading Cases (5 Ed.) Notes to *Rathbon* v. *Budlong,* 767, side p.. 636.

The question under consideration was not before the court in *Wheeler* v. *Reed,* 36 Ill. 91, nor in *Mann et al.* v. *Richardson,* 66 id. 481, and what was there said affecting it was by way of argument merely, and, so far as intended to announce a principle, must be understood as restricted to cases where there are apt words in the instrument to charge the agent personally, by rejecting the words descriptive of his agency as surplusage.

In *Duncan* v. *Niles,* 32 Ill. 532, the court quoted with approval, however, this language from the opinion of the court in *Abby* v. *Chase, supra,* and predicated the decision upon it, and upon other cases of like tenor: "When one who has no authority to act as another's agent assumes so to act, and makes either a deed or a simple contract in the name of the other, he is not personally liable on the covenants in the deed, or on the promise in the simple contract, unless it contain apt words to bind him personally. The only remedy against him in this commonwealth, is an action on the case for falsely assuming authority to act as agent."

It is true, in that case the agent sought to be held personally responsible assumed to act as the agent of a public corporation, and there is a distinction between the measure of liability imposed upon public and private agents; but the authorities referred to and relied upon apply, so far as the *form of the remedy* is concerned, as well to private as to public agents.

We regard what is quoted from Story, *supra,* as a correct statement of the result of the authorities, and think it is not inconsistent with anything that has been heretofore decided by this court.

Inasmuch, therefore, as the undertaking to perform the covenants in the lease of the party of the second part assumes to be that of " The Chicago Literary Association " alone, and there are no apt words from which an individual undertaking can be implied, if we shall reject the name " The Chicago Lit-

erary Association " wherever it occurs, we must hold that the defendants can not be held individually responsible in the present action on the lease, and affirm the judgment.

*Judgment affirmed.*