Decided 3 April, 1899.

## COCHRAN *v.* BAKER.

[52 Pac. 520; 56 Pac. 641.]

1. REMITTITUR—POWER OF SUPREME COURT TO CORRECT JUDGMENT.—Where there is an erroneous judgment at law entered on undisputed facts, the supreme court may remand the case with directions to enter a particular judgment, as was done in *Merchants' National Bank* v. *Pope*, 19 Or. 35, and *Nodine* v. *Shirley*, 24 Or. 250; or, if a judgment is manifestly excessive, by an inspection of the record, and the amount thereof is apparent, the court may affirm the judgment on penalty of a new trial, unless the excess is remitted, as in the case of *Fiore* v. *Ladd*, 29 Or. 528.

2. UNAUTHORIZED CONTRACT BY AGENT—LIABILITY—FORM OF ACTION.—An agent who makes a contract on behalf of his principal in excess of his authority is, on the repudiation of the contract by the principal, liable thereon, though he made no false representations as to his authority, since he impliedly warranted that he was empowered to make the contract. The action will be in contract rather than in tort.

3. RELEASE OF SURETY BY PREMATURE PAYMENT.—The payment of an installment on a building contract in advance of the time provided by the contract discharges the surety on the contractor's bond against mechanics' liens only to the extent of such payment.

4. MECHANIC'S LIENS—NONLIENABLE ITEMS.—A mechanic's lien is not void *in toto* because the statement of account on which it is based included nonlienable items, where they were included without improper motives, and were small in amount, and capable of being segregated.

5. EVIDENCE—ADMISSIONS IN OFFER OF COMPROMISE.—Admissions of a party, not made when a compromise was under consideration, are admissible against him.

From Marion :  GEORGE H. BURNETT, Judge.

Action by P. A. Cochran, F. A. Ford, and J. H. Mack, against J. E. Baker, to recover damages for the breach of an implied warranty of authority to sign a certain bond. Defendant appeals from a judgment against him. Before the final hearing respondents moved for permission to correct a mistake in the judgment, and offered to remit an excess that had been inadvertently entered in their favor.

MOTION OVERRULED.   JUDGMENT MODIFIED.

Decided 14 March, 1898.

## ON MOTION TO CORRECT RECORD.

This is an offer by plaintiffs to remit the excess of their judgment over and above the amount demanded, viz., the sum of $115.81, and a motion for leave to apply to the court below to correct a mistake in its record, which it is insisted was inadvertently made.

*Mr. A. C. Hough* for the motion.

*Messrs. J. A. Carson* and *D. C. Sherman, contra.*

PER CURIAM.   1.   It is generally conceded that a trial court at all times possesses inherent power to amend its judgments, orders, and decrees by a *nunc pro tunc* entry, so as to cause them to conform to the proceedings had therein, and make them speak the truth, provided no rights of third persons have intervened, and such correction can be made by a mere inspection of the record, or by reference to some memorandum of the trial, made at the hearing thereof by the court, or from the pleadings on file, without resorting to evidence *aliunde :* Elliott, App. Proc. § 209;  1 Black, Judgm. § 155;  1 Freeman, Judgm. § 71;  *Douglas County Road Co.* v. *Douglas County,* 5 Or. 406;  *Harvey's Heirs* v. *Wait,* 10 Or. 117;  *Ladd* v. *Mason,* 10 Or. 308;   *Carter* v. *Koshland,* 12 Or. 492 (8 Pac. 556);  *Nicklin* v. *Robertson,* 28 Or. 278 (42 Pac. 993, 52 Am. St. Rep. 790).   While in some instances it has been held that a trial court loses all jurisdiction over its judgment when an appeal therefrom has been perfected, numerous respectable authorities can be cited in support of the doctrine that such court, notwithstanding the appeal, retains plenary power over the record of its judg-

ments and decrees, and may correct it in the manner indicated : 2 Enc. Pl. & Prac. 231, and notes ; Elliott, App. Proc. § 541 ; 1 Black, Judgm. § 162, and cases cited. But, if it be conceded that the trial court possesses such power, there is no necessity, in the case at bar, of any action on its part ; for if the cause was referred to a referee, who took the testimony and made findings of fact and law therefrom which were approved by the court, or if the action were tried by the court without the intervention of a jury, resulting in an erroneous judgment in law, and there is no dispute as to the facts, this court has power to modify the judgment complained of, and, having done so, may remand the cause to the lower court, with directions to enter a particular judgment instead of ordering a new trial : Elliott, App. Proc. §§ 564, 567 ; *Merchants' National Bank* v. *Pope*, 19 Or. 35 (26 Pac. 622) ; *Nodine* v. *Shirley*, 24 Or. 250 (33 Pac. 379). So, too, if it is manifest that an excessive judgment has been rendered, which is predicated upon an erroneous verdict, and this court, from an inspection of the record, is able to segregate the excess from the amount so found by the jury, it may, on condition that the respondent remits the excess, affirm the judgment for the balance ; otherwise a new trial will be ordered. Elliott, App. Proc. § 570 ; *Mackey* v. *Olssen*, 12 Or. 429 (8 Pac. 357); *Fiore* v. *Ladd*, 29 Or. 528 (46 Pac. 144). The excess of the judgment being ascertainable from an inspection of the pleadings, this court is competent to make the proper correction, without ordering a new trial ; but, inasmuch as other alleged errors are assigned in the notice of appeal, a trial of the cause upon the merits will be necessary, in view of which we have concluded to deny the motion, with leave to reargue it upon such trial ; and it is so ordered.

MOTION OVERRULED.

Decided 3 April, 1899.

## On the Merits.

This is an action to recover damages for the wrongful and unauthoritative use of the name of another as surety in the execution of a bond conditioned for the faithful performance of a building contract on the part of the principals. The complaint states, in substance, that on or about March 28, 1894, plaintiffs entered into an agreement with Plummer & Ault, contractors, whereby the said contractors agreed, for the consideration of $4,745, to furnish the necessary labor and materials, and to build and complete, by July 15, 1894, a one-story brick block, in accordance with designated specifications, and to save plaintiffs harmless from all liens thereon; the consideration to be paid in installments, the last of which, amounting to $745, to be paid thirty days after the final acceptance of the structure by the owners. It is also alleged that at the same time the said Plummer & Ault executed and delivered to plaintiffs their bond in the penal sum of $4,745, purporting to be signed by one J. C. Goodale as surety, and conditioned that, if the said Plummer & Ault should construct and complete said block in all respects according to said contract and specifications, and not permit any person or persons to obtain any lien thereon for labor or materials furnished, then the said bond to be null and void; otherwise to remain in full force and effect, and be liable to enforcement to the extent of all damages which might be sustained by reason of the failure of the said Plummer & Ault to comply with their obligations under said contract; and that, in case said plaintiffs should be held or required to pay for any labor or materials done or furnished to said

Plummer & Ault in the construction of said block, said Plummer & Ault and said Goodale should repay the same to plaintiffs. It is further alleged that before the delivery of said bond Plummer & Ault presented the same to J. E. Baker, the defendant, and that he thereupon wrongfully and unlawfully, and without authority therefor, and without the knowledge or consent of said plaintiffs, or either of them, subscribed the name of J. C. Goodale as surety thereto, and that Plummer & Ault thereupon delivered said bond to plaintiffs, who, relying upon the financial responsibility of the said Goodale, and believing his name subscribed to said bond, as aforesaid, to be his true and genuine signature, accepted the same; that, upon the faith thereof, plaintiffs paid to Plummer & Ault at different times during the construction of said block, and before its completion, various sums, aggregating $4,576.29, to be applied upon the contract price; that at the time of the completion of the said block, and before the plaintiffs took possession, there was due and owing to material men and laborers on liens duly filed thereon the sum of $1,387.67; that the said Goodale repudiated and denied the execution of the bond, and plaintiffs were compelled to and did pay all of said liens, amounting to $1,218.96 in excess of the contract price, for which latter sum they demand judgment as damages.

The answer puts in issue the allegations touching the wrongful and unlawful subscribing of Goodale's name by the defendant to the bond in question, the default on the part of Plummer & Ault, and the payment of the lien claims for labor and material. As a further defense it is averred, in effect, that on or about August 8, 1894, the defendant notified plaintiffs that there were certain claims for liens existing against said premises, and requested plaintiffs to withhold further payments; that, in addition thereto, plaintiffs had knowledge that other

claims for labor and material furnished to said contractors were then unpaid, but that, in utter disregard of said notice, they refused and neglected to withhold the payment of moneys to become due, and made payments to said contractors long before the same became due and payable; that the money so paid was not used in payment for labor or materials employed in the construction of said block. An issue was tendered by the reply. Trial was had before the court without the intervention of a jury, and, after the plaintiffs had concluded their testimony, the defendant moved for a nonsuit for the reason that the complaint does not state sufficient facts, and that the testimony was insufficient to support the action. The motion was overruled, and, judgment having been rendered for the plaintiffs, the defendant appeals.

                                        Modified.

For appellant there was a brief over the names of *D. C. Sherman* and *John A. Carson*, with an oral argument by *Mr. Sherman*.

For respondents there was a brief over the names of *A. C. Hough* and *Geo. G. Bingham*, with an oral argument by *Mr. Bingham*.

Mr. Chief Justice Wolverton, after making the foregoing statement, delivered the opinion.

2. The bond in question appears upon its face to have been subscribed by Goodale in person, as there is no mark or designation to indicate that it had been done by an agent. In this condition it was presented by Plummer to the plaintiffs for their acceptance, who supposed that Goodale had in reality signed it. The testimony shows that but one of the plaintiffs had been acquainted

with Goodale prior to the date of the execution of the bond, and that all were unacquainted with the defendant; that they had no conversation, directly or indirectly, with either the defendant or Goodale, touching the matter of the execution of the bond, and no representations in any form or manner were made to them by either the defendant or Goodale regarding the manner of signing or touching the authority of defendant to act in the capacity of the agent of Goodale in the execution thereof; and, as a matter of fact, they did not discover that the bond was not signed by Goodale in person until long after its execution, and near the time plaintiffs were called upon to pay the said liens. The defendant seems to have tried the case, and now presents the same here for our consideration, upon the theory that the action is one for false representation and deceit, and claims that the plaintiffs have failed to allege in the complaint, or show by the testimony, sufficient facts to support an action of that character. The plaintiffs, however, insist that the action is not necessarily in tort, but, whether it be so denominated or not, that the facts stated in the complaint and disclosed by the record are sufficient upon which to maintain the cause. Defendant made no express representations touching his authority as agent, or, at least, none were made to the plaintiffs, either directly or indirectly, as they were entirely ignorant of the fact that Goodale's name was signed to the bond by another until long after it had been accepted by them. We may also take it for granted that defendant honestly believed he was fully authorized to execute the bond in behalf of and as the agent of Goodale in the manner in which he assumed to execute it, and that he acted in entire good faith, but erroneously, as it pertained to his authority in the premises. There can be no doubt that such a state

34 Or.—36.

of facts would constitute a cause of action against the agent where parties have been damaged in reliance upon his acts, and thus far it may be said that the authorities are practically agreed. The agent, by undertaking to act for another as his principal, tacitly and impliedly represents himself to be authorized as a matter of fact to so act, and becomes liable if it appears that he assumed as true that which he did not know to be so. The reason upon which the liability is founded is that the party dealing with such a supposed agent is deprived of any remedy upon the contract against the principal. The contract, though in form that of the principal, is not his in fact, and, of course, is not susceptible of enforcement against him ; and, as the loss must fall somewhere, it is but a rule of justice that it should be borne by him whose acts made it possible :   Mechem, Agency, § 545 ; *Baltzen* v. *Nicolay*, 53 N. Y. 467 ;   *Kroeger* v. *Pitcairn*, 101 Pa. St. 311 (47 Am. St. Rep. 718).

But as regards the form of action to be adopted in such a case, the authorities are somewhat in conflict. In *Jefts* v. *York*, 10 Cush. 392, 395, it is maintained in an opinion by Chief Justice SHAW that if a supposed agent acts without authority, but under the belief that he possessed it, and a party has advanced money without knowledge of his want of authority, he would be liable in an action on the case to an amount in damages equal to the sum advanced ; and that, "if one falsely represents that he has an authority, by which another, relying on the representation, is misled, he is liable ; and by acting as agent for another, when he is not, though he thinks he is, he tacitly and impliedly represents himself authorized without knowing the fact to be true, it is in the nature of a false warranty, and he is liable. But in both cases his liability is founded on the ground of deceit, and the remedy is by action of tort."

This view is seemingly concurred in and approved by *Hancock* v. *Yunker*, 83 Ill. 208 ; *Cole* v. *O'Brien*, 34 Neb. 68 (33 Am. St. Rep. 616, 51 N. W. 316); *McCurdy* v. *Rogers*, 21 Wis. 199 (91 Am. Dec. 468). Another doctrine, however, is maintained in New York, and is stated by ANDREWS, J., in *Baltzen* v. *Nicolay*, 53 N. Y. 467, as follows : "When an agent makes a contract beyond his authority, by which the principal is not bound by reason of the fact that it was unauthorized, the agent is liable in damages to the person dealing with him upon the faith that he possessed the authority which he assumed. The ground and form of his liability in such a case has been the subject of discussion, and there are conflicting decisions upon the point ; but the later and better-considered opinions seem to be that his liability, when the contract is made in the name of his principal, rests upon an implied warranty of his authority to make it, and the remedy is by an action for its breach." This doctrine finds support in *White* v. *Madison*, 26 N. Y. 117 ; *Lewis* v. *Nicholson*, 18 Q. B. 502 ; *Noe* v. *Gregory*, 7 Daly, 283 ; *Taylor* v. *Nostrand*, 134 N. Y. 108 (31 N. E. 246). It is elsewhere asserted that the remedy against one who assumes to act without authority as the agent of another, and in that capacity attempts to make a contract in behalf of his supposed principal, is in the nature of an action for deceit, or upon the breach of the implied warranty of his authority, according to the facts of the particular case : 1 Am. & Eng. Enc. Law (2 ed.), 1127 ; *Patterson* v. *Lippincott*, 47 N. J. Law, 457 (1 Atl. 506). The question is a new one in this state, but we are impressed with the view that under the facts of the case at bar the plaintiffs have an action against the defendant upon his implied warranty touching his agency, and that it is one in contract, rather than in tort. The complaint concisely states the facts as they exist, and, while it does

not, in express terms, count upon a breach of warranty, yet the facts set forth lead to such a legal inference, and, under our system of pleadings, is quite sufficient to support the action : *White* v. *Madison*, 26 N. Y. 117.   In this view neither the allegations nor proofs requisite to sustain the ordinary action in deceit, based upon false representations as claimed by defendant, are necessary to the maintenance of plaintiffs' action upon the implied warranty.

3.   There is another question in the same connection which requires notice before passing.   The complaint avers that plaintiffs at various times during the construction of the block, and before the completion thereof, paid the contractors various sums, aggregating $4,576.26, being within $168.71 of the full contract price.   The defendant maintains that, in view of the condition of the contract, the last payment of $745 should be made thirty days after the building was finally completed, it is a necessary and unavoidable deduction that the plaintiffs have violated their contract in making such payment long prior to the time fixed therefor, and have thereby released the defendant from his obligation.   The proposition proceeds upon the assumption—which is proper—that the defendant should be treated as a surety for the contractors upon the bond or obligation ; to be exact, the stipulation touching the $745 payment is that it should be made "thirty days after the building is finally accepted by the owners," and there might be a question whether the averment negatives the condition, but this may be waived.   The defendant has set up by way of further defense that payments were made long prior to the time when they became due under the terms of the contract, in utter disregard of its provisions, and without the knowledge or consent of the supposed surety.   Touching this defense, there is a direct denial by the reply, thus

presenting the issue directly to the court upon the question of fact as to the time of making such payments. Upon this issue the question was tried before the court without a jury, which made findings with reference thereto, and, among others, that plaintiffs had paid, and were compelled to pay, for materials furnished and labor performed, $1,334.77 in excess of the contract price. In this light, and looking at the question most favorably to the defendant, the payment admitted by the complaint to have been made prior to the stipulated time therefor under the contract—conceding for the present purpose that it is so admitted—could only operate as a discharge of the defendant or the surety *pro tanto: Foster* v. *Gaston*, 123 Ind. 96 (23 N. E. 1092). He was, therefore, not entitled to a nonsuit, as the amount of the premature payment was much less than that found by the court to have been paid by plaintiffs in excess of the contract price.

The defendant, conscious of this difficulty, contends it appears from the evidence that the plaintiffs utterly disregarded the terms of the contract respecting the time of making the other payments also. The strong trend of the evidence upon this question, however, shows approximate performance in accord with the agreement of the parties. Furthermore, it is elicited that defendant knew in most part the manner in which payments were being made, and to a considerable extent directed how and when they should be made; so that, in any event, it would have been manifestly improper to grant the nonsuit.

4. During the course of the trial three certain statements of account were offered and admitted in evidence, each of which contained some item or items of small moment, which it is claimed were for articles that did not go into the buildings, and were, therefore, nonlien-

able. Objection was made to the introduction of the statements on the ground that they contained such nonlienable items, and their admission is assigned as error. The objection, as we understand it, proceeds upon the ground that the inclusion of the nonlienable items rendered the liens claimed in pursuance of the statements void; but the items were of such small moment, even granting that they were nonlienable, as to preclude the idea that they were included and commingled with such as were lienable for the purpose of gaining any advantage in the transaction, and, withal, were susceptible of being segregated, and, therefore, could not be held to avoid the liens; hence the statements were properly admitted in evidence.

5.   Another objection was made to the introduction of certain evidence touching admissions made by defendant during the course of a supposed compromise; but this is untenable, for the reason that it very clearly appears that at the time the admissions were made the parties were not engaged in any direct endeavor to compromise the matters in dispute.

The judgment of the court below is for $1,334.77, which is in excess of the prayer of the complaint by $115.81. The error was first discovered by the plaintiffs after the appeal had been taken and perfected; but immediately upon the discovery they filed in this court a showing to the effect that judgment was so entered through their inadvertence, and ask that they be allowed to file a remission of such excess. It is undeniably proper that they should be allowed to make the remission and have an affirmance, and, in accordance with former precedents, the judgment of the court below will be affirmed, if within ten days the plaintiffs shall file in this court their remission of such excess; otherwise, it will be reversed: *Mackey* v. *Olssen*, 12 Or. 429 (8 Pac. 357); *Fiore*

v. *Ladd,* 29 Or. 528, 535 (46 Pac. 144). If this were the only question presented upon the appeal, it would have been proper to tax the costs to respondents; but other questions were urged, upon which we may presume defendant based his entire reliance for a reversal, so that the costs should abide the usual rule.

MODIFIED.